

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-17-00142-CR

ERIK JONATHAN CARRASCO                                              APPELLANT

V.

THE STATE OF TEXAS                                                         STATE

----------

## FROM COUNTY CRIMINAL COURT NO. 8 OF TARRANT COUNTY
## TRIAL COURT NO. 1471572

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant Erik Jonathan Carrasco appeals his conviction for driving while intoxicated (DWI)—misdemeanor repetition. *See* Tex. Penal Code Ann. § 49.09(a) (West Supp. 2017). In three points, Carrasco argues that the trial court committed reversible error by permitting the State to read the enhancement

---

[1]*See* Tex. R. App. P. 47.4.

paragraph to the jury before the guilt-innocence phase; that the evidence showing the presence of methamphetamine in his blood is insufficient to prove that he was intoxicated; and that Texas Code of Criminal Procedure article 102.0185(a), which assesses a $100 emergency-services fee as court costs, is facially unconstitutional. *See* Tex. Code Crim. Proc. Ann. art. 102.0185 (West Supp. 2017). For the reasons set forth below, we will delete the $100 court cost associated with the emergency-services fee and affirm the judgment as modified.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On May 14, 2016, Gabriel Sanchez was driving on Lancaster Avenue when he saw a red pickup truck ahead of him that was swerving between the right lane and the turning lane. When the pickup truck stopped in the turning lane, Sanchez moved over to the right and passed the pickup truck. When Sanchez stopped at an intersection, he saw the pickup truck coming at him from behind and noted that the pickup truck was not slowing down. Sanchez warned his wife, who was with him, that the pickup truck was going to hit them. At the last minute, the male driver of the pickup truck braked hard, swerved to cut through the parking lot of a gas station, and continued on Bowen Road. Sanchez also continued on Bowen Road, keeping his distance from the pickup truck. When Sanchez saw the pickup truck swerve into oncoming traffic, he called 911. Sanchez continued to follow the speeding pickup truck and provide updates to the 911 operator. While they were still on Bowen Road, Sanchez saw a utility worker run to get out of the truck's way because it almost hit the utility worker

2

and his utility truck that was parked in the right lane. After turns onto Pioneer Parkway and Cooper Street, Sanchez saw the pickup truck swerve between lanes and speed away. The pickup truck then made a right on Collins Street and an immediate left into a QuikTrip parking lot, almost hit a car and a woman, and then returned to the service road. Sanchez lost sight of the pickup truck after it ran a red light at Matlock Road.

Based on Sanchez's 911 call, Lieutenant Cook caught up with the pickup truck and initiated a stop. Officer Darrell Gordon with the Arlington Police Department joined Lieutenant Cook in approaching the vehicle. Lieutenant Cook asked the driver to exit the pickup truck and escorted him to the back of the pickup truck. Officer Gordon noted that when the driver exited the car, he exhibited unsteady balance. Lieutenant Cook asked the driver, who was identified as Carrasco, several general questions, and then Officer Gordon took over the investigation. Officer Gordon noted that Carrasco had bloodshot eyes and slurred speech and that an odor of marijuana was emanating from inside the truck.[2] Based on the reports of Carrasco's erratic driving and his physical appearance, Officer Gordon believed that Carrasco was intoxicated.

Officer Gordon asked Carrasco where he was coming from, and Carrasco said that he had started from his family's house in Fairfield but could not recall

---

[2]Officer Gordon testified at trial that he had completed the Advanced Roadside Impaired Driving Enforcement (ARIDE) course after the stop and that based on that training, he would now describe the smell of the smoke coming from inside the vehicle as possible methamphetamine or cocaine.

3

the address. Carrasco told Officer Gordon that he was headed to his mother's house in Arlington, but he did not know her address. Carrasco said that he was not taking any medication and that he had not suffered any head injuries. Officer Gordon questioned Carrasco about whether he had been drinking and whether he had smoked marijuana, and Carrasco responded that he had not drunk any alcohol and that he had not smoked any marijuana. During the questioning, Carrasco was "very standoff-ish," upset, and agitated. Carrasco refused to perform any field sobriety tests. Carrasco also refused to voluntarily provide a sample of his blood and his breath.

Officer Gordon decided to arrest Carrasco based on the 911 caller's description of Carrasco's driving (weaving from lane to lane, running a red light at Matlock Road, and almost hitting a pedestrian at QuikTrip), on Carrasco's physical appearance (bloodshot eyes, slurred speech, and unsteady balance), and on the smell of marijuana that came from inside the truck. Officer Gordon concluded that Carrasco had lost the use of his mental faculties due to intoxication but that the intoxication was not due to alcohol.

Because Carrasco refused to provide a blood sample, Officer Gordon obtained a search warrant to have Carrasco's blood drawn. Carrasco's blood tested positive for methamphetamine. Officer Gordon testified that methamphetamine can cause someone to lose the normal use of his mental or physical faculties. Officer Gordon further testified that Carrasco's behaviors were consistent with someone who had taken methamphetamine.

4

Cheryl Wheeler, a senior forensic toxicologist with the Tarrant County Medical Examiner's Office, testified that Carrasco's blood sample contained 183 nanograms of methamphetamine per milliliter of blood. Wheeler further testified that the form of methamphetamine detected in Carrasco's blood was the illegal form of methamphetamine. Wheeler could not testify about the effects of 183 nanograms per milliliter of methamphetamine on the body because that was outside her area of expertise.

Deputy Joel Garcia, a fingerprint identification expert with the Tarrant County Sheriff's Department, testified that the fingerprints on a DWI judgment from 2003 matched Carrasco's fingerprints.

After hearing the above evidence, the jury found Carrasco guilty of DWI as charged in the information.[3] Carrasco entered into a punishment agreement with

---

[3]The misdemeanor information charged Carrasco as follows:

Comes now the undersigned Assistant Criminal District Attorney of Tarrant County, Texas, in behalf of the State of Texas, and presents in and to the COUNTY CRIMINAL COURT NO. 8 of Tarrant County, Texas

THAT ERIK JONATHAN CARRASCO, HEREINAFTER CALLED DEFENDANT, IN THE COUNTY OF TARRANT AND STATE AFORESAID, ON OR ABOUT THE 14TH DAY OF MAY 2016, DID OPERATE A MOTOR VEHICLE IN A PUBLIC PLACE WHILE THE SAID DEFENDANT WAS INTOXICATED,

ENHANCEMENT PARAGRAPH: AND IT IS FURTHER PRESENTED IN AND TO SAID COURT THAT PRIOR TO THE COMMISSION OF THE AFORESAID OFFENSE BY THE SAID DEFENDANT, THAT ON THE 9TH DAY OF JULY 2003, IN THE COUNTY COURT AT LAW OF ECTOR COUNTY, TEXAS, IN

5

the State to serve 190 days in jail, and the trial court sentenced him in accordance with that agreement. Carrasco then perfected this appeal.

## III. THE TRIAL COURT DID NOT ERR BY ALLOWING THE ENHANCEMENT TO BE READ BEFORE THE GUILT-INNOCENCE PHASE

In his first point, Carrasco argues that the trial court committed reversible error by permitting the State to read the enhancement paragraph in the information to the jury before the guilt-innocence phase of the trial.

Article 36.01 of the code of criminal procedure provides that the indictment or information shall be read to the jury by the prosecuting attorney after a jury is impaneled. Tex. Code Crim. Proc. Ann. art. 36.01(a) (West 2007). However, not all portions of the indictment or information may be read to the jury at the outset. *See generally id.* When prior convictions are alleged for purposes of enhancement and are not jurisdictional, that portion of the indictment or information reciting such convictions shall not be read to the jury until the punishment phase begins. *Id.* The purpose is to prevent prejudice against a defendant during the guilt-innocence stage from the jurors having heard or read the specific allegations in any enhancement paragraphs. *Gentry v. State*, 881 S.W.2d 35, 40 (Tex. App.—Dallas 1994, pet. ref'd).

---

CAUSE NUMBER 033103, THE SAID DEFENDANT WAS CONVICTED OF THE OFFENSE OF DRIVING WHILE INTOXICATED AND SAID CONVICTION BECAME FINAL PRIOR TO THE COMMISSION OF THE AFORESAID OFFENSE,

AGAINST THE PEACE AND DIGNITY OF THE STATE.

6

Article 36.01 does not, however, restrict reading the portions of the indictment containing the elements of the offense because the State must prove each element of the offense beyond a reasonable doubt to obtain a guilty verdict. *See generally* Tex. Code Crim. Proc. Ann. art. 36.01(a); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). An element is a fact that is legally required for a factfinder to convict a person of a substantive offense. *Schmutz v. State*, 440 S.W.3d 29, 34 (Tex. Crim. App. 2014). In discerning whether any given fact constitutes an element of an offense, we look to the plain language of the statute involved. *Calton v. State*, 176 S.W.3d 231, 234 (Tex. Crim. App. 2005).

Here, Texas Penal Code section 49.09(a) provides that a DWI is a Class A misdemeanor "if it is shown on the trial of the offense that the person has previously been convicted one time of an offense relating to the operating of a motor vehicle while intoxicated." Tex. Penal Code Ann. § 49.09(a). The prior DWI is a fact that is "legally required for a fact[]finder to convict a person" of Class A misdemeanor DWI. *See Schmutz*, 440 S.W.3d at 34 (defining "element"); *see also Jackson*, 443 U.S. at 315, 99 S. Ct. at 2787 (requiring proof beyond a reasonable doubt of "every fact necessary to constitute the crime with which he is charged"). Thus, under the statute's plain language, one prior DWI conviction is an element of the offense of Class A misdemeanor DWI under section 49.09(a). *See Oliva v. State*, 525 S.W.3d 286, 292 (Tex. App.—Houston [14th Dist.] 2017, pet. granted); *Mapes v. State*, 187 S.W.3d 655, 659–60 (Tex.

7

App.—Houston [14th Dist.] 2006, pet. ref'd); *see also Gibson v. State*, 995 S.W.2d 693, 695–96 (Tex. Crim. App. 1999) (concluding that one prior intoxication-related offense elevated DWI offense from Class B to Class A misdemeanor).

Carrasco contends on appeal that "[t]he State did not incorporate [his] prior [DWI] conviction into the primary offense as an essential element to prove a Class A misdemeanor" because the information contained "a separate and distinct 'Enhancement Paragraph.'"[4]  Carrasco's argument places form over substance.  Although the second paragraph in the information is labeled "Enhancement Paragraph," that label does not cause the prior conviction to act as a punishment enhancement.  In the context of section 49.09(a), one prior DWI conviction "serve[s] the purpose of enhancing the [DWI] *offense*" from a Class B misdemeanor—the classification for a single DWI offense with no prior conviction—to a Class A misdemeanor.  *See* Tex. Penal Code Ann. § 12.43

---

[4]The jury charge clearly set forth the prior DWI conviction as an element of the offense:

> Now, if you find from the evidence beyond a reasonable doubt that in Tarrant County, Texas, on or about the 14th day of May, 2016, the defendant, Erik Jonathan Carrasco, did then and there operate a motor vehicle in a public place while the said defendant was intoxicated, and if you find from the evidence beyond a reasonable doubt that prior to the commission of the aforesaid offense by the said Defendant, that on the 9th day of July 2003, in the County Court at Law of Ector County, Texas, in Cause Number 033103, the said Defendant was convicted of the offense of driving while intoxicated and said conviction became final prior to the commission of the aforesaid offense, then you will find the defendant guilty as charged.

(West 2011) (titled "Penalties for Repeat and Habitual Misdemeanor Offenders" and raising the punishment range upon conviction of a Class A, Class B, and Class C misdemeanor based on certain prior convictions); *Gibson*, 995 S.W.2d at 696 (emphasis added). It does not serve the purpose of enhancing the *punishment*. *See* Tex. Penal Code Ann. § 49.04(a), (b) (West Supp. 2017), § 49.09(a); *Oliva*, 525 S.W.3d at 293.

Because one prior DWI conviction is an element of the offense of Class A misdemeanor DWI, the State had the burden to prove beyond a reasonable doubt during the guilt-innocence stage that Carrasco had one prior DWI conviction. *See* Tex. Penal Code Ann. § 49.09(a); *Oliva*, 525 S.W.3d at 293. Accordingly, the trial court did not err by permitting the State to read the second paragraph of the information, which alleged that Carrasco had one prior DWI conviction, to the jury at the outset of the guilt-innocence stage of the trial. *See* Tex. Code Crim. Proc. Ann. art. 36.01(a); *cf. Ford v. State*, 112 S.W.3d 788, 792 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (holding that trial court did not err by allowing State to read enhancement paragraph to the jury because prior conviction constituted an element of the felony offense of evading arrest); *Montgomery v. State*, No. 10-03-00324-CR, 2005 WL 675556, at *4 (Tex. App.— Waco Mar. 23, 2005, pet. ref'd) (mem. op., not designated for publication) ("[T]he trial court did not err in allowing the portions of the indictment alleging a prior conviction for evading arrest to be read to the jury because the prior conviction is an element of the offense."). We overrule Carrasco's first point.

9

## IV. SUFFICIENT EVIDENCE SUPPORTS ELEMENT OF INTOXICATION

In his second point, Carrasco argues that the evidence showing the presence of methamphetamine in his blood is insufficient to prove that he was intoxicated.

### A. Standard of Review

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Jenkins*, 493 S.W.3d at 599.

### B. Law on Intoxication[5]

"Intoxicated" is defined by the penal code as "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those

---

[5]The elements of a Class A misdemeanor DWI include the following: (1) a person, (2) is intoxicated, (3) while operating, (4) a motor vehicle, (5) in a public place, and (6) has one prior DWI conviction. *See* Tex. Penal Code Ann. §§ 49.04(a), 49.09(a). Because Carrasco challenges only the sufficiency of the evidence to support the intoxication element, we set forth the law and review the evidence solely as to that element.

substances, or any other substance into the body" or as "having an alcohol concentration of 0.08 or more." Tex. Penal Code Ann. § 49.01(2)(A)(B) (West 2011). The jury charge here defined "intoxicated" as "[n]ot having the normal use of mental or physical faculties by reason of the introduction of a controlled substance into the body."

Intoxication can be proven through circumstantial evidence. *Paschall v. State*, 285 S.W.3d 166, 177 (Tex. App.—Fort Worth 2009, pet. ref'd) (reflecting that intoxication may be proved through circumstantial evidence). "'Evidence of intoxication' encompasses specific conduct that, when combined with other specific conduct which is also evidence of intoxication, leads to the conclusion that a person is intoxicated or is under the influence of alcohol to the degree that he may endanger himself or another." *Cotton v. State*, 686 S.W.2d 140, 142 (Tex. Crim. App. 1985). The court of criminal appeals has identified several characteristics that constitute evidence of intoxication, including erratic driving and postdriving behavior such as stumbling, swaying, slurring or mumbling words, or bloodshot or glassy eyes. *See Kirsch v. State*, 306 S.W.3d 738, 745 (Tex. Crim. App. 2010); *Cotton*, 686 S.W.2d at 142–43 & 142 n.3. The jury may consider a person's refusal to provide a breath or blood sample as probative evidence of his intoxication because it establishes consciousness of guilt. *See* Tex. Transp. Code Ann. § 724.061 (West 2011); *Bartlett v. State*, 270 S.W.3d 147, 153 (Tex. Crim. App. 2008). The testimony of a police officer regarding the defendant's behavior and the officer's opinion that the defendant is intoxicated

11

provides sufficient support to uphold a jury verdict. *See Annis v. State*, 578 S.W.2d 406, 407 (Tex. Crim. App. [Panel Op.] 1979).

## C. Analysis

The record here contains overwhelming evidence of intoxication. Sanchez, the 911 caller, described Carrasco's erratic driving, which included almost rear-ending Sanchez, almost hitting a utility worker and a utility truck, swerving between lanes, speeding, almost hitting a woman in the parking lot at QuikTrip, and running a red light. Officer Gordon described Carrasco's appearance—bloodshot eyes, slurred speech, and unsteady balance—and testified about Carrasco's inability to provide addresses for where he was coming from and where he was going. Officer Gordon testified at trial that after completing the ARIDE training, he believed the odor emanating from Carrasco's vehicle on the date in question was methamphetamine. Carrasco refused to submit to the field sobriety, blood, and breath tests. After Carrasco's blood was drawn pursuant to a warrant, the lab results revealed that his blood tested positive for methamphetamine. Officer Gordon testified that methamphetamine can cause someone to lose the normal use of his mental or physical faculties and that Carrasco's behaviors were consistent with someone who had taken methamphetamine. Officer Gordon concluded that Carrasco was intoxicated from a substance other than alcohol.

Carrasco argues that the State did not present expert scientific evidence "as to the intoxicating effect, if any, of methamphetamine or whether nanograms

12

of methamphetamine in one milliliter of Mr. Carrasco's blood would cause Mr. Carrasco to have lost the normal use of his mental and physical faculties at the time he was driving." The jury, as the factfinder, could have reasonably inferred Carrasco's loss of the normal use of his mental and physical faculties—as demonstrated by his erratic driving, his physical appearance, and his answers to Officer Gordon's questions—was due to the methamphetamine in his system because the lab results showed that the illegal form of methamphetamine was the only controlled substance in Carrasco's blood. *See Paschall*, 285 S.W.3d at 178 (holding evidence sufficient to permit jury to infer that appellant's loss of the normal use of his mental or physical faculties was by reason of the introduction of "a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance" into his body). Expert testimony was thus not necessary. *See Williams v. State*, 895 S.W.2d 363, 366 (Tex. Crim. App. 1994) (stating that expert testimony must be limited to situations in which the expert's knowledge and experience on a relevant issue are beyond that of an average juror); *Waller v. State*, No. 05–09–00097–CR, 2009 WL 4642850, at *3 (Tex. App.—Dallas Dec. 9, 2009, no pet.) (mem. op., not designated for publication) (holding no expert testimony was necessary to support conviction for driving while intoxicated because evidence of arresting officer's experience and observations could support conviction).[6]

---

[6]To the extent Carrasco's second point encompasses an argument that the State had the burden to prove that methamphetamine was the intoxicant that

13

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could find beyond a reasonable doubt that Carrasco was intoxicated at the time of the traffic stop. *See* Tex. Penal Code Ann. § 49.01(2)(A); *Annis*, 578 S.W.2d at 407 (holding arresting officer's testimony regarding his observations of defendant's driving, physical appearance, postdriving behavior, and his conclusion of intoxication sufficient). Accordingly, we hold the evidence sufficient to support Carrasco's conviction for DWI–misdemeanor repetition, and we overrule Carrasco's second point.

### V. SECTION 102.0185(a) IS FACIALLY UNCONSTITUTIONAL

In his third point, Carrasco argues that Texas Code of Criminal Procedure article 102.0185(a), which assesses a $100 emergency-services fee as court costs, is facially unconstitutional. *See* Tex. Code Crim. Proc. Ann. art. 102.0185. The State concedes that Carrasco should not have been charged the $100 emergency-services fee in light of this court's opinion in *Casas v. State*. 524 S.W.3d 921, 926–27 (Tex. App.—Fort Worth 2017, no pet.) (holding that emergency-services fee imposed under article 102.0185 does not direct that the funds be used in the manner that would make it a court cost, rendering it facially unconstitutional). Accordingly, we sustain Carrasco's third point.

---

caused the loss of the normal use of his mental and physical faculties, the court of criminal appeals has held that the substance that causes intoxication is not an element of the offense of DWI. *See Gray v. State*, 152 S.W.3d 125, 132 (Tex. Crim. App. 2004).

14

## VI. CONCLUSION

Having sustained Carrasco's third point, we modify the judgment and bill of costs to subtract the $100 emergency-services cost from the $487.10[7] total court costs assessed, leaving $387.10 in total court costs. *See Cates v. State*, 402 S.W.3d 250, 252 (Tex. Crim. App. 2013) (stating that when trial court improperly included fees in assessed court costs, proper remedy was to reform judgment to delete improper fees); *Casas*, 524 S.W.3d at 927. Having overruled Carrasco's first and second points, we affirm the trial court's judgment as modified. *See* Tex. R. App. P. 43.2(b).

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL: WALKER and PITTMAN, JJ., and CHARLES BLEIL (Senior Justice, Retired, Sitting by Assignment).

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: January 4, 2018

---

[7]Although the judgment reflects that total court costs of $432.10 were assessed, this appears to be a scrivener's error because the bill of costs and the criminal docket both reflect total court costs of $487.10. Because the judgment did not accurately reflect the amount of costs for which there is a basis in the record, we modify the judgment to match the bill of costs. *See Nolan v. State*, 39 S.W.3d 697, 698 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (stating that appellate court may reform a trial court's judgment to accurately reflect the record when it has the necessary data and information to do so); *see also Gilder v. State*, No. 14-13-01088-CR, 2014 WL 7204962, at *4 (Tex. App.—Houston [14th Dist.] Dec. 18, 2014, no pet.) (mem. op., not designated for publication) (modifying judgment to match cost bill).

15