

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-16-00122-CR

---

CARLOS ENRIQUE CASAS                                                    APPELLANT

V.

THE STATE OF TEXAS                                                             STATE

----------

FROM COUNTY CRIMINAL COURT NO. 6 OF TARRANT COUNTY
TRIAL COURT NO. 1410078

----------

## OPINION

----------

Appellant Carlos Enrique Casas appeals from his conviction for driving while intoxicated. In two points, he challenges the denial of his pretrial motion to suppress and the imposition of a statutorily mandated court cost in the subsequent community-supervision order. We conclude that the trial court's pretrial denial was not void based on an alleged bias. But we are constrained to hold, based on binding precedent, that the challenged court cost is facially

unconstitutional, and we modify the trial court's community-supervision order to delete that amount.

## I. BACKGROUND

On February 14, 2015, Fort Worth Police Sergeant J.R. Seabourn was stationary in his patrol car, facing the eastbound lanes of Southwest Boulevard located in Tarrant County and operating a radar gun for speed enforcement. Seabourn's radar alerted him to an eastbound Dodge truck, which was traveling at 63 miles per hour in a 35-mile-per-hour speed zone.[1]  Seabourn pulled the truck over and subsequently arrested the driver—Casas—for driving while intoxicated.  Casas was later charged by information with the misdemeanor offense of driving while intoxicated with a blood-alcohol concentration of 0.15 or more.  *See* Tex. Penal Code Ann. § 49.04(a), (d) (West Supp. 2016).

Before trial, Casas filed a motion to suppress all evidence obtained as a result of Seabourn's stop because he asserted Seabourn did not have either reasonable suspicion or probable cause to stop his truck.  The trial court held a hearing at which both Seabourn and Casas testified.  Casas stated that when Seabourn pulled him over, he told Casas that he was going 43 miles per hour in a 35-mile-per-hour zone.  Seabourn denied that he told Casas his speed had been 43 miles per hour and testified that he regularly would stop drivers in that

---

[1]Although the speed limit increases to 45 miles per hour near where Seabourn was sitting, Seabourn consistently stated that the radar indicated the truck's speed at the time it was in the 35-mile-per-hour zone—before the truck entered the 45-mile-per-hour zone near Seabourn's patrol car.

area only if they were going 52 miles per hour or faster. The trial court denied

Casas's motion and stated its reasoning on the record:

> The Court having heard the testimony of the Defense and of the police officer is of the opinion that there was probable cause to stop the vehicle. . . . And whether he was speeding 43 in a 35 or 63 in a 35, it was both speeding. When you look at where he called out and said he shot his radar to, that was the 35 area. Having some familiarity with that area . . ., I actually know where the policeman sits to some extent. So whether or not he stopped somebody at 52 in a 35 or a 45, that's his own discretion. It's still against the law if it's over 35 or over 45. For that reason I deny the motion to suppress as it exists now. The only ruling I've made is on the stop, and that's a very limited ruling. So I deny the motion to suppress at this time.

Casas then pleaded guilty to the information. Following the plea-bargain

agreement between Casas and the State, the trial court sentenced Casas to

ninety days' confinement, suspended imposition of the sentence, and placed him

on community supervision for twelve months. *See* Tex. Code Crim. Proc. Ann.

art. 42.12, § 3 (West Supp. 2016). The trial court also assessed court costs of

$395.10 against Casas in the community-supervision order.[2] The clerk's

itemized bill of costs, which was not incorporated into the community-supervision

order, reflected that $100 of the assessed court costs was for "EMERGENCY

MANAGEMENT SERVICES."

Casas filed a motion for new trial, arguing that "the evidence is insufficient

to support conviction[]," which was deemed denied. *See* Tex. R. App. P. 21.8(c).

Casas also filed a notice of appeal, and the trial court certified that it had given

---

[2]The order was entitled "**PROBATION ORDER**," but we will refer to the order as the community-supervision order.

him permission to appeal. *See* Tex. R. App. P. 25.2(a)(2)(B), (d); *see also* Tex. Code Crim. Proc. Ann. art. 44.02 (West 2006). He now challenges the trial judge's bias regarding his motion to suppress and the assessment of the emergency-services cost.

## II. TRIAL JUDGE BIAS

Casas first asserts that because the trial judge considered his personal knowledge of where officers habitually patrol for speeders in the area—"I actually know where the policeman sits to some extent"—the trial judge decided the motion not based on the admitted evidence but based on his bias or impartiality; thus, the denial of Casas's motion to suppress was void as a denial of due process even though Casas did not object in the court below.[3] Indeed, the lack of an impartial trial judge is a structural error that violates due process and is not subject to a harm analysis. *See Arizona v. Fulminante*, 499 U.S. 279, 309–10 (1991); *see also* Tex. R. Evid. 103(e) (allowing appellate court to consider fundamental error when, as here, error is not preserved).

When an appellant claims judicial bias, we are to review the record to determine if it demonstrates that the trial judge's bias denied the appellant due process of law. *See Hernandez v. State*, No. 05-13-00076-CR, 2014 WL 1047263, at *3 (Tex. App.—Dallas Mar. 17, 2014, no pet.) (mem. op., not designated for publication); *Ex parte Freeman*, 778 S.W.2d 874, 877 (Tex.

---

[3]The trial judge that presided over the motion to suppress and signed the community-supervision order was a visiting judge.

4

App.—Houston [1st Dist.] 1989, no pet.). But even though judicial bias is structural error, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion," and a trial judge's opinions formed during trial do not necessitate recusal "unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Thus, bias or prejudice is something more than an unfavorable ruling and must "connote a favorable or unfavorable disposition or opinion that is somehow *wrongful* or *inappropriate*, either because it is undeserved, or because it rests upon knowledge that the subject ought not to possess . . ., or because it is excessive in degree." *Id.* at 550; *see Abdygapparov v. State*, 243 S.W.3d 191, 198 (Tex. App.—San Antonio 2007, pet. ref'd) (relying on and quoting *Liteky*, 510 U.S. at 550).

Casas relies on an opinion in which our sister court of appeals concluded that a trial judge was biased, violating the defendant's due-process rights, based on his consideration of evidence not adduced at a hearing on a motion to suppress evidence. *Gentry v. State*, No. 06-05-00237-CR, 2006 WL 932057, at *3 (Tex. App.—Texarkana Apr. 12, 2006, no pet.) (mem. op., not designated for publication). In that case, the trial judge denied the defendant's motion to suppress after "effectively short-circuit[ing]" the hearing because the trial judge actually saw the defendant engaging in the conduct leading to the officer's investigatory detention—"walking in and out of traffic or in and out of pastures and things." *Id.* at *1. The trial judge denied the motion to suppress solely

5

"based on his personal knowledge about the sequence of events": "I remember this day. I live on that road. This Motion is going to be denied because I'm one of them that almost hit them. . . . I've got firsthand knowledge of the situation . . . and I believe [the officer] has the right to [detain the defendant]." *Id.*

In another similar case, a trial judge "sought out the location" of the disputed detention before hearing all of the evidence on the defendant's motion to suppress. *State v. Haworth*, No. 13-15-00519-CR, 2017 WL 1737953, at *1–2 (Tex. App.—Corpus Christi May 4, 2017, no pet.). Relying on his personal observations, the trial judge granted the motion to suppress because the officer's justification for the detention seemed factually "impossible" based on the trial judge's personal inspection of the location. *Id.* at *1. The court of appeals concluded that the trial judge's personal knowledge of contested facts disqualified him, creating a structural error and rendering the trial court's ruling void. *Id.* at *3.

But in this case, the trial court did not have personal knowledge of a disputed fact that was outside the record. *See generally Gaal v. State*, 332 S.W.3d 448, 453 (Tex. Crim. App. 2011) (citing *Gentry* and recognizing that judge's personal knowledge of disputed facts requires disqualification). All the evidence before the trial court showed that when Seabourn measured Casas's speed with the radar gun, the truck was located in the 35-mile-per-hour zone, not the 45 zone. And the trial judge, unlike the judge in *Gentry* or *Haworth*, specifically stated that he based his ruling on "the testimony of the Defense and

6

of the police officer" and the fact that Casas's speed, established through Seabourn's testimony, exceeded even the 45-mile-per-hour limit. *See Vickers v. State*, 467 S.W.3d 90, 99 (Tex. App.—Texarkana 2015, pet. ref'd) (finding trial judge not disqualified based on his personal knowledge of mental-health issues because judge heard all evidence and argument before making extrajudicial comments); *cf. Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006) (concluding no evidence trial court was biased or imposed predetermined sentence because judge heard all the evidence before making comments about his personal feelings regarding similarly situated defendants). Therefore, the trial judge did not base his suppression ruling on an impermissible bias but on the admitted evidence, including Casas's admission that Seabourn told him he had been going 43 miles per hour in a 35-mile-per-hour zone, which provided Seabourn with the requisite reasonable suspicion to stop Casas. *See Delafuente v. State*, 414 S.W.3d 173, 178–79 (Tex. Crim. App. 2013); *Nnamani v. State*, No. 02-15-00429-CR, 2016 WL 6803384, at *5–6 (Tex. App.—Fort Worth Nov. 17, 2016, no pet.) (mem. op., not designated for publication). We overrule point one.

### III. CONSTITUTIONALITY OF COURT COST

In his second point, Casas contends that the imposed emergency-services cost is facially unconstitutional because it does not relate to the administration of the criminal-justice system. As a preliminary matter, the parties allotted portions of their briefing on this issue to whether Casas was required to first raise this

argument in the trial court to raise it on appeal. The court of criminal appeals has clearly resolved this issue: "[I]n the context of court-cost challenges[,] . . . an appellant may not be faulted for failing to object when he or she was simply not given the opportunity to do so." *London v. State*, 490 S.W.3d 503, 507 (Tex. Crim. App. 2016). Accordingly, because the record before this court does not show that the challenged court cost was imposed in open court or that it was itemized in the community-supervision order, Casas may raise his complaint for the first time on appeal. *See Ingram v. State*, 503 S.W.3d 745, 748 (Tex. App.— Fort Worth 2016, pet. ref'd).[4]

The code of criminal procedure authorizes the imposition of an additional $100 court cost upon conviction of an intoxication offense to be allocated for emergency-medical services, trauma facilities, and trauma-care systems. Tex. Code Crim. Proc. Ann. art. 102.0185 (West Supp. 2016). Casas bears the burden to show that this statute is facially unconstitutional, which means that he must establish that no set of circumstances exists under which the statute would be valid. *See Peraza v. State*, 467 S.W.3d 508, 514 (Tex. Crim. App. 2015), *cert. denied*, 136 S. Ct. 1188 (2016). We presume the statute is valid and may consider the statute only as written, rather than how it might operate in practice. *See id.* at 514–15.

---

[4]We note that the parties did not have the benefit of our opinion in *Ingram* when they filed their appellate briefs in this case.

8

Although courts may not operate as tax gatherers, which is a function reserved to the executive branch of government, courts may collect fees in criminal cases as part of its judicial function "if the statute under which court costs are assessed (or an interconnected statute) provides for an allocation of such court costs to be expended for legitimate criminal justice purposes." *Id.* at 517. We determine whether an assessed court cost is, indeed, a cost or an unconstitutional tax by reference to when the cost is collected, not when the money is spent. *See Salinas v. State*, No. PD-0170-16, 2017 WL 915525, at *4 n.26 (Tex. Crim. App. Mar. 8, 2017). In other words, the question "is determined by what the governing statute says about the intended use of the funds, not whether funds are actually used for a criminal justice purpose." *Id.* at *2.

Regarding article 102.0185, the comptroller deposits the monies collected in an account in the general revenue fund established for emergency-medical services, trauma facilities, and trauma-care systems. Tex. Code Crim. Proc. Ann. art. 102.0185(f); Tex. Health & Safety Code Ann. § 773.006(a) (West 2017). The commissioner of state health services is directed to use the monies deposited in the reserved account "to fund county and regional emergency medical services, designated trauma facilities, and trauma care systems" in accordance with certain statutory percentages and to maintain a $500,000 reserve. Tex. Health & Safety Code Ann. § 773.122(a)–(f) (West 2017). All of the percentages relate to emergency and trauma healthcare expenditures. *Id.*

9

Casas argues that the emergency-services cost does not fund legitimate, criminal-justice purposes because the "entirety of the fee collected under Article 102.0185(a) is . . . allocated solely to emergency medical services, trauma care facilities[,] and systems." The State contends that because the statutory definitions of trauma services, trauma facility, emergency-medical care, and emergency-medical services would possibly include such services that are provided to individuals seriously injured by a drunk driver and unable to pay, this is a legitimate, criminal-justice purpose. *See id.* § 773.003(7-a)–(9), (19), (22) (West 2017); 25 Tex. Admin. Code § 157.131 (last amended 2007) (Dep't of State Health Servs., Designated Trauma Facility and Emergency Medical Services Account).

But the medical-services cost suffers from the same infirmity that the court of criminal appeals found applicable to portions of a consolidated fee imposed as a court cost upon criminal conviction under the local government code. *Salinas*, 2017 WL 915525, at *3–5 (analyzing portions of consolidated fees on conviction imposed under local government code section 133.102(e)(1), (6)). In that case, the court of criminal appeals found facially unconstitutional two court costs that were imposed to fund "abused children's counseling" and "comprehensive rehabilitation." *Id.* at *3-4. The court concluded that although it was possible that crime victims would avail themselves of the services funded by the costs, the funds were not allocated for legitimate, criminal-justice purposes:

> [Under the opposing view,] a fee to be paid for children's health
> insurance, without any other restriction, would be "for a criminal

10

justice purpose" because someone who is a victim of a crime might receive medical services paid for by that insurance. Or a fee for the purpose of funding college student loans that would be available to anyone would be "for a criminal justice purpose" because someone who was a victim of a crime (or a convict, for that matter) could apply for such a loan. Under such a view, there would be no limits to the types of fees the legislature could require the courts to collect, and courts would effectively be tax gatherers.

Because the constitutional infirmity in this case is the statute's failure to *direct* the funds to be used in a manner that would make it a court cost (i.e., for something that is a criminal justice purpose), the statute operates unconstitutionally every time the fee is collected, making the statute unconstitutional on its face. The fact that some of the money collected may ultimately be spent on something that would be a legitimate criminal justice purpose if the legislature had directed its use in that fashion is not sufficient to create a constitutional application of the statute because the actual spending of the money is not what makes a fee a court cost.

*Id.* at *4 n.26.

The State's argument here fails for the same reason it failed in *Salinas*: "The fact that some of the money collected may ultimately be spent on something that would be a legitimate criminal justice purpose if the legislature had directed its use in that fashion [,i.e., injured victims of an intoxication offense] is not sufficient. . . ." *Id.* Neither the statute authorizing the collection of the emergency-services cost nor its attendant statutes direct the funds to be used for a legitimate, criminal-justice purpose; therefore, it is a tax that is facially unconstitutional. *See id.* at *3–5. We sustain point two.

## IV. CONCLUSION

We conclude that the trial judge's comments do not demonstrate a structural bias or partiality such that the community-supervision order is rendered

11

void as a violation of Casas's right to due process.  But the cost imposed under article 102.0185 does not direct that the funds be used in the manner that would make it a court cost, rendering it facially unconstitutional.  Accordingly, we modify the trial court's community-supervision order to change the assessed court costs to $295.10, subtracting the $100 emergency-services cost from the $395.10 assessed.[5]  *See id.* at *7.  As modified, we affirm the trial court's community-supervision order.  *See* Tex. R. App. P. 43.2(b).

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL:  LIVINGSTON, C.J.; GABRIEL and SUDDERTH, JJ.

PUBLISH

DELIVERED:  July 20, 2017

---

[5]We recognize that in invalidating the costs assessed under section 133.102 of the local government code, the court of criminal appeals granted relief to Salinas as the party who convinced the court that the statute was facially unconstitutional and to any similar party that was then before the court of criminal appeals on the same issue.  *Id.* at *6.  But the court declined to grant retroactive relief to other parties subjected to the consolidated court cost, applying the holding only prospectively to trials ending after June 30, 2017—the date the *Salinas* mandate issued.  *Id.*; *see also Horton v. State*, No. 02-16-00229-CR, 2017 WL 1953333, at *5 (Tex. App.—Fort Worth May 11, 2017, pet. filed) (en banc).  Here, Casas is the party initially convincing this court to overturn an unconstitutional statute—article 102.0185; therefore, we grant him the requested relief.  *Salinas*, 2017 WL 915525, at *6–7.

12