**Opinion issued August 30, 2018**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-16-00768-CR

————————————

**RUBEN LEE ALLEN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 337th District Court**
**Harris County, Texas**
**Trial Court Case No. 1487627**

---

### DISSENTING OPINION ON REHEARING

*[O]ur clerks of court should not be made tax collectors for our state,*
*nor should the threshold to our justice system be used as a toll booth*
*to collect money for random programs created by the legislature.*[1]

---

[1]  *State v. Lanclos*, 980 So. 2d 643, 651 (La. 2008) (internal quotations omitted) (holding $5.00 fee assessed against criminal defendants pursuant to Louisiana statute constituted "a tax collected by the courts, and thus a violation of the [S]eparation of [P]owers doctrine"); *see also LeCroy v. Hanlon*, 713 S.W.2d 335,

A jury found appellant, Ruben Lee Allen, guilty of the offense of aggravated robbery with a deadly weapon.[2]  After finding true the allegation in an enhancement paragraph that he had previously been convicted of a felony offense, the jury assessed his punishment at confinement for twenty-five years.  In the judgment of conviction, the trial court ordered appellant to pay court costs, "[a]s [a]ssessed," which included a $200 charge for "Summoning Witness/Mileage."[3]  In his second issue, appellant contends that the "Summoning Witness/Mileage" fee assessed against him is unconstitutional.

Because the majority, on rehearing, errs in holding that appellant has not met his burden of establishing the unconstitutionality of Texas Code of Criminal Procedure article 102.011(a)(3) and (b), I respectfully dissent.

### "Summoning Witness/Mileage" Fee

In his second issue, appellant argues that the $200 "Summoning Witness/Mileage" fee assessed against him, an indigent criminal defendant, by the

---

342 (Tex. 1986) ("If the right to obtain justice freely is to be a meaningful guarantee, it must preclude the legislature from raising general revenue through charges assessed to those who would utilize our courts." (internal quotations omitted)).

[2]    *See* TEX. PENAL CODE ANN. § 29.03(a)(2) (Vernon 2011).

[3]    *See* TEX. CODE CRIM. PROC. ANN. art. 102.011(a)(3), (b) (Vernon 2018) (imposing $5 charge on criminal defendant convicted of felony "for summoning [each] witness" and requiring defendant to pay "29 cents per mile for mileage required of an officer to perform a service . . . and to return from performing that service").

trial court is (1) facially unconstitutional because it violates the Separation of Powers clause of the Texas Constitution and (2) unconstitutional as applied to him because it violates his constitutional rights to compulsory process and confrontation.[4]  *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10 (rights to compulsory process and confrontation), TEX. CONST. art. II, § 1 (Separation of Powers clause); *see also* TEX. CODE CRIM. PROC. ANN. art. 1.05 (Vernon 2005).

We review the constitutionality of a criminal statute de novo as a question of law.  *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013); *Maloney v. State*, 294 S.W.3d 613, 626 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd).  When presented with a challenge to the constitutionality of a statute, we presume that the statute is valid and the legislature did not act unreasonably or arbitrarily.  *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002); *Maloney*, 294 S.W.3d at 626.  The party challenging the statute has the burden to establish its unconstitutionality.  *Rodriguez*, 93 S.W.3d at 69; *Maloney*, 294 S.W.3d at 626.  We must uphold the statute if we can apply a reasonable construction that will render it constitutional.  *Ely v. State*, 582 S.W.2d 416, 419 (Tex. Crim. App. [Panel Op.] 1979); *see also Maloney*, 294

---

[4]     A criminal defendant may challenge the imposition of mandatory court costs for the first time on direct appeal when those costs are not imposed in open court and the judgment does not contain an itemization of the imposed court costs.  *See London v. State*, 490 S.W.3d 503, 506–07 (Tex. Crim. App. 2016); *see also Johnson v. State*, 423 S.W.3d 385, 390–91 (Tex. Crim. App. 2014); *Casas v. State*, 524 S.W.3d 921, 925 (Tex. App.—Fort Worth 2017, no pet.).

3

S.W.3d at 626 (if statute can be interpreted in two different ways, one of which sustains its validity, we apply interpretation sustaining its validity).

"A facial challenge to a statute is the most difficult challenge to mount successfully" because it is an attack on the statute itself, rather than a particular application of it. *Santikos v. State*, 836 S.W.2d 631, 633 (Tex. Crim. App. 1992); *Toledo v. State*, 519 S.W.3d 273, 279 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd). To prevail on a facial challenge to a statute, the challenging party must establish that no set of circumstances exists under which the statute would be constitutionally valid. *State v. Rosseau*, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013); *see also Horhn v. State*, 481 S.W.3d 363, 372 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd).

Appellant argues that the "Summoning Witness/Mileage" fee assessed against him, an indigent criminal defendant, by the trial court, violates the Separation of Powers clause of the Texas Constitution and constitutes an impermissible tax collected by the judiciary because "the funds" received from criminal defendants for the fee are "not directed by statute to be used for a criminal justice purpose." Instead, "the funds" are "directed towards the general revenue fund of the county" "in which the convicting court is located."

Article II, section 1, of the Texas Constitution provides:

The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a

4

separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

TEX. CONST. art. II, § 1; *see also Meshell v. State*, 739 S.W.2d 246, 252 (Tex. Crim. App. 1987) ("[This] single, tersely phrased paragraph, provides that the constitutional division of the government into three departments (Legislative, Executive and Judicial) shall remain intact, 'except in the instances herein expressly permitted.'" (quoting TEX. CONST. art. II, § 1)). "This division ensures that [the] power granted [to] one branch may be exercised by only that branch, to the exclusion of the others." *Ex parte Lo*, 424 S.W.3d at 28; *see also Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 600 (Tex. 2001) ("The [S]eparation-of-[P]owers doctrine prohibits one branch of government from exercising a power inherently belonging to another branch."); *Meshell*, 739 S.W.2d at 252 ("[A]ny attempt by one department of government to interfere with the powers of another is null and void." (internal quotations omitted)).

The Separation of Powers clause is violated "when one branch of government assumes or is delegated a power more properly attached to another branch." *Ex parte Lo*, 424 S.W.3d at 28 (internal quotations omitted); *see also Salinas v. State*, 523 S.W.3d 103, 106–07 (Tex. Crim. App. 2017). A court is delegated a power more properly attached to the executive branch, rather than to the judiciary, where a statute

5

turns the court into a "tax gatherer[]." *Salinas*, 523 S.W.3d at 107, 109 n.26 (quoting *Peraza v. State*, 467 S.W.3d 508, 517 (Tex. Crim. App. 2015)) (explaining "[t]he issue is whether the fee in question is a court cost (which is allowed) or a tax (which is unconstitutional)").

However, the collection of fees by a court in a criminal case constitutes a judicial function, and thus does not violate the Separation of Powers clause of the Texas Constitution, where a "statute under which [a] court cost[] [is] assessed (or an interconnected statute) provides for an allocation of such [a] court cost[] to be expended for [a] legitimate criminal justice purpose[]." *Salinas*, 523 S.W.3d at 107, 109 n.26 (quoting *Peraza*, 467 S.W.3d at 517); *see also Casas v. State*, 524 S.W.3d 921, 925–27 (Tex. App.—Fort Worth 2017, no pet.) ("Although courts may not operate as tax gatherers, which is a function reserved to the executive branch of government, courts may collect fees in criminal cases as part of [their] judicial function if the statute under which [the] court costs are assessed (or an interconnected statute) provides for an allocation of such [court] costs to be expended for legitimate criminal justice purposes." (internal quotations omitted)).

"What constitutes a legitimate criminal justice purpose is a question to be answered on a statute-by-statute/case-by-case basis." *Salinas*, 523 S.W.3d at 107; *see also Peraza*, 467 S.W.3d at 518. "And the answer to that question is determined by what [a] governing statute says about the intended use of the funds [collected

6

from criminal defendants], not whether [the] funds are actually used for a criminal justice purpose." *Salinas*, 523 S.W.3d at 107, 109 n.26; *see also Casas*, 524 S.W.3d at 926. In other words, in order to not run afoul of the Separation of Powers clause of the Texas Constitution, a statute that imposes a court cost on a criminal defendant must direct "that the funds [collected pursuant to that statute] be used for something that is a legitimate criminal justice purpose; it is not enough that some of the funds may ultimately benefit someone who has some connection with the criminal justice system." *Salinas*, 523 S.W.3d at 109 n.26.

As the Texas Court of Criminal Appeals has noted, "[w]hen a defendant is convicted in a criminal case, various statutes require [him to] pay[] [certain] fees as court costs." *Salinas*, 523 S.W.3d at 105; *see also Johnson v. State*, 423 S.W.3d 385, 389 (Tex. Crim. App. 2014) ("Only statutorily authorized court costs may be assessed against a criminal defendant . . . ."). Relevant to the instant case, article 102.011(a)(3) and (b) require a defendant "convicted of a felony or misdemeanor" to pay fees for certain services "performed . . . by a peace officer," including "$5 for summoning [each] witness" and "29 cents per mile for mileage required of an officer to perform [the] service . . . and to return from performing that service." TEX. CODE CRIM. PROC. ANN. art. 102.011(a)(3), (b) (Vernon 2018).

In *Salinas*, the court of criminal appeals held that Local Government Code section 133.102, which requires a person convicted of a criminal offense to pay a

"Consolidated Court Cost" fee,[5] violates the Separation of Powers clause of the Texas Constitution to the extent that it allocates funds received from criminal defendants to the "abused children's counseling" account.[6] 523 S.W.3d at 105, 109–110, 109 n.26 (internal quotations omitted). In doing so, the court explained that the funds received from criminal defendants for the "Consolidated Court Cost" fee that

---

[5] *See* TEX. LOCAL GOV'T CODE ANN. § 133.102(a) (Vernon Supp. 2017) ("A person convicted of an offense shall pay as a court cost, in addition to all other costs: (1) $133 on conviction of a felony; (2) $83 on conviction of a Class A or B misdemeanor; or (3) $40 on conviction of a nonjailable misdemeanor offense, including a criminal violation of a municipal ordinance, other than a conviction of an offense relating to a pedestrian or the parking of a motor vehicle."); *see also Salinas v. State*, 523 S.W.3d 103, 105 (Tex. Crim. App. 2017) (under Local Government Code section 133.102, "[a] defendant pays a single fee, but the money from that fee is divided up among a variety of different state government accounts according to percentages dictated by the statute").

[6] The court also held that Local Government Code section 133.102 is unconstitutional, in violation of the Separation of Powers clause, to the extent that it allocates funds received from criminal defendants to the "[c]omprehensive [r]ehabilitation" account because such funds serve "[n]o criminal justice purpose." *Salinas*, 523 S.W.3d at 105, 107–09 (internal quotations omitted). Since *Salinas*, the court of criminal appeals has repeatedly held that the portions of the "Consolidated Court Cost" fee that allocate funds received for the fee to the "abused children's counsel" account and the "comprehensive rehabilitation" account are unconstitutional. *See, e.g.*, *Carter v. State*, No. PD-1449-16, 2018 WL 1101310, at *1–2 (Tex. Crim. App. Feb. 28, 2018); *Amie v. State*, Nos. PD-0253-16, PD-0254-16, 2017 WL 5476352, at *1 (Tex. Crim. App. Nov. 15, 2017); *Johnson v. State*, 537 S.W.3d 929, 929–30 (Tex. Crim. App. 2017); *Davis v. State*, No. PD-1314-15, 2017 WL 4410265, at *1 (Tex. Crim. App. Oct. 4, 2017); *Guerrero v. State*, Nos. PD-0665-15, PD-0666-15, 2017 WL 4410256, at *1 (Tex. Crim. App. Oct. 4, 2017); *Penright v. State*, 537 S.W.3d 916, 916–17 (Tex. Crim. App. 2017); *see also* Act of May 18, 2017, 85th Leg., R.S., ch. 966, § 1, 2017 Tex. Sess. Law Serv. 3917 (amending Local Government Code section 133.102 to remove the "abused children's counseling" account and "comprehensive rehabilitation" account identified by the court of criminal appeals as unconstitutional).

are allocated to the "abused children's counseling" account are actually "deposited in the [State's] General Revenue Fund." *Id.* at 110 (internal quotations omitted). Accordingly, the court concluded:

> We cannot uphold the constitutionality of funding [the "abused children's counseling"] account through court costs on the basis of its name or its former use *when all the funds in the account go to general revenue*. Consequently, the allocation of funds to the "abused children's counseling" account does not currently qualify as an allocation of funds "to be expended for legitimate criminal justice purposes." To the extent that § 133.102 allocates funds to the "abused children's counseling" account, it is facially unconstitutional in violation of the Separation of Powers provision of the Texas Constitution.

*Id.* at 110 (emphasis added).

Essentially, the court of criminal appeals, in *Salinas*, explained that there are "limits" to the types of fees that the legislature "c[an] require the courts to collect" and "it [was simply] not enough that some of the funds [collected pursuant to the 'Consolidated Court Cost' fee] may ultimately benefit someone who has some connection with the criminal justice system." *Id.* at 109 n.26. Instead, the court held that where a statute fails "to *direct* the funds [collected from criminal defendants] to be used in a manner that would make it a court cost (i.e., for something that is a criminal justice purpose), th[at] statute operates unconstitutionally every time the fee is collected, making the statute unconstitutional on its face." *Id.* at 109 n.26, 110 n.36 ("The fee is unconstitutional because the funds are not directed by statute to be used for a criminal justice purpose.").

9

This Court, relying on the court of criminal appeals' decision in *Salinas*, has since addressed the issue of whether the $25 "[P]rosecutor's fee" assessed against a criminal defendant, pursuant to Texas Code of Criminal Procedure article 102.008(a), is facially unconstitutional because it violates the Separation of Powers clause of the Texas Constitution. *See Hernandez v. State*, No. 01-16-000755-CR, --- S.W.3d ---, 2017 WL 3429414, at *6–7 (Tex. App.—Houston [1st Dist.] Aug. 10, 2017, no pet. h.).[7] In doing so, we noted that article 102.008(a) requires "a defendant convicted of a misdemeanor" to pay "a fee of $25 for the trying of [his] case by the district or county attorney." *Id.* at *6 (quoting TEX. CODE CRIM. PROC. ANN. art. 102.008(a) (Vernon 2018)). However, article 102.008(a) "does not [actually] state where the [funds received from criminal defendants for the] $25 ['Prosecutor's] fee['] [are] to be directed." *Id.*; *see* TEX. CODE CRIM. PROC. ANN. art. 102.008(a).

Instead, we noted that the Office of Court Administration's website shows that "100% of the money collected" for the "[P]rosecutor's fee" remains "with the [c]ounty (or the [c]ity)," which the court serves and "is directed to th[at] [c]ounty's (or [c]ity's) General Fund." *Hernandez*, 2017 WL 3429414, at *6 (quoting Office of Court Administration, *Study of the Necessity of Certain Court Costs and Fees in Texas* (Sept. 1, 2014), at 6–7 in Criminal Court Costs Section (Fee No. 13,

---

[7]     This case is currently before the Court on rehearing.

"Prosecutor's Fee"), http://www.txcourts.gov/media/495634/SB19 08-Report-FINAL.pdf (purpose of study, ordered by Senate Bill 1908, to "identif[y] each statutory law imposing a court fee or cost in a court in this state" and "[d]etermine whether each identified fee or cost is necessary to accomplish the stated statutory purpose"))[8]; *see also Salinas*, 523 S.W.3d at 110 (noting, based on Texas Comptroller's website, funds collected pursuant to Local Government Code section 133.102 for "abused children's counseling" account "deposited in the [State's] General Revenue Fund"). And "[m]oney in a county's [or city's] general fund can be spent for 'any proper county [or city] purpose.'" *Hernandez*, 2017 WL 3429414, at *6 (quoting Tex. Att'y Gen. Op. No. JM-530 (1986)).

Thus, relying on *Salinas*, we explained that "the constitutional infirmity" in *Hernandez* was that article 102.008(a) did not "*direct* the funds [collected from criminal defendants for the '[P]rosecutor's fee'] to be used in a manner that would make it a court cost (i.e., for something that is a criminal justice purpose)."[9] *Id.* at

---

[8] The study conducted by the Office of Court Administration identified several concerns, including the fact that "some fees and costs [ordered to be collected from criminal defendants] have no stated statutory purpose," "court fees and costs collected from [criminal defendants] are oftentimes used to fund programs outside of and unrelated to the judiciary," and "many court fees and costs are collected for a purpose but [are] not dedicated or restricted to be used exclusively for that intended purpose." *See* Office of Court Administration, *Study of the Necessity of Certain Court Costs and Fees in Texas* (Sept. 1, 2014), at 2, http://www.txcourts.gov/media/495634/SB1908-Report-FINAL.pdf.

[9] The State, in its motion for rehearing in *Hernandez*, concedes that article 102.008(a) does not contain language directing the funds collected from criminal defendants

11

*7 (quoting *Salinas*, 523 S.W.3d at 109 n.26); *see also Johnson v. State*, No. 14-16-00658-CR, --- S.W.3d ---, 2018 WL 1476275, at *4–5 (Tex. App.—Houston [14th Dist.] Mar. 27, 2018, no pet. h.) (Texas Code of Criminal Procedure article 102.004, imposing $40 fee on criminal defendant convicted by jury, "on its face[,] violates [S]eparation-of-[P]owers provision because the statute does not direct that the funds collected be expended for something that is a legitimate criminal-justice purpose"). And we concluded that article 102.008(a) "operates unconstitutionally every time the ['Prosecutor's] fee['] is collected," making the statute unconstitutional on its face. *Hernandez*, 2017 WL 3429414, at *7 (quoting *Salinas*, 523 S.W.3d at 109 n.26). Further, we noted that although "some of the money collected" for the "[P]rosecutor's fee" "may ultimately be spent on something that would be a legitimate criminal justice purpose," this "is not sufficient to create a constitutional application of the statute because the actual spending of the money is not what makes a fee a court cost." *Id.* (quoting *Salinas*, 523 S.W.3d at 109 n.26).

Accordingly, we held that because article 102.008(a) does not direct that the funds received from criminal defendants for the $25 "[P]rosecutor's fee" be expended for a criminal justice purpose, the statute is unconstitutional in violation of the Separation of Powers clause, as "it allocates [the] funds [collected] to

for the "[P]rosecutor's fee" to be expended for any legitimate criminal justice purpose.

12

the . . . general fund" of the county that the court serves and allows such funds to be spent "for purposes other than legitimate criminal justice purposes." *Id.*; *see also Salinas*, 523 S.W.3d at 109–10 ("We cannot uphold the constitutionality of funding th[e] ['abused children's counseling'] account . . . when all the funds in the account go to [the State's] general revenue [fund]."); *Peraza*, 467 S.W.3d at 518 n.17 (agreeing "court costs should [generally] relate to the recoupment of judicial resources"); *Johnson*, 2018 WL 1476275, at *4–5 (holding Code of Criminal Procedure article 102.004 unconstitutional, in violation of Separation of Powers clause, where it "fail[ed] to direct the funds collected to be used for something that is a legitimate criminal-justice purpose"); *Toomer v. State*, No. 02-16-00058-CR, 2017 WL 4413146, at *3 (Tex. App.—Fort Worth Oct. 5, 2017, pet. ref'd) (holding Code of Criminal Procedure article 102.0185 unconstitutional, in violation of Separation of Powers clause, because "[n]either the statute authorizing the collection of the emergency-services costs nor its attendant statutes direct the funds to be used for a legitimate, criminal-justice purpose"); *Casas*, 524 S.W.3d at 925–27 (holding Code of Criminal Procedure article 102.0185 unconstitutional, in violation of Separation of Powers clause, and noting "monies collected" from "emergency-services cost" allocated to general revenue fund); Tex. Att'y Gen. Op. No. JC-0158 (1999) ("Court fees that are used for general purposes are characterized as taxes, and a tax imposed on a litigant . . . violat[es] . . . the constitution.").

Accordingly, we modified the trial court's judgment to delete the $25 "[P]rosecutor's fee" from the costs assessed against the criminal defendant. *Hernandez*, 2017 WL 3429414, at *7.

Surprisingly, here, the majority concludes, unlike we did in *Hernandez*, that *Salinas* and its progeny are irrelevant to the instant case. And now, on rehearing, the majority strains to distinguish both *Hernandez* and *Salinas*[10] so that it may hold that Texas Code of Criminal Procedure article 102.011(a)(3) and (b) are not facially unconstitutional.[11] In doing so, the majority misinterprets the court of criminal

---

[10] While the majority takes great pains to distinguish these cases and reconcile its opinion on rehearing with their controlling nature, I am not persuaded and "cannot join the [laborious effort] in which the majority engages by forcing a square peg into a round hole." *See Saunders v. Lee*, 180 S.W.3d 742, 746 (Tex. App.—Waco 2005, no pet.) (Gray, C.J., dissenting).

[11] It is imperative to remember that when the legislature oversteps its bounds and passes a statute that violates the Texas Constitution, there is no shame in a court saying so. *See LeCroy*, 713 S.W.2d at 339 (courts have "the power and duty to protect the . . . guaranteed rights of all Texans" and "[b]y enforcing [the] constitution, [courts] provide Texans with their full individual rights"). As Justice Franklin Spears has explained:

> [The legislature may not] force the judiciary into the role of a subordinate and supplicant governmental service—in effect, a mere agency. The judiciary is not an agency, but is a constitutionally established separate, equal and independent branch of government.
>
> . . . .
>
> . . . . The judicial power provides a check on the abuse of authority by other governmental branches. If the courts are to provide that check, they cannot be subservient to the other branches of government but must ferociously shield their ability to judge independently and fairly. This is the essence of our very existence; we owe the people of Texas no less than our unflinching insistence on a true tripartite

14

appeals' decision in *Peraza*, which pre-dates *Salinas*, and fails to apply the correct legal standard pronounced in *Salinas* to the instant case.

In *Peraza*, the Texas Court of Criminal Appeals addressed whether a $250 "DNA record fee" assessed against a criminal defendant pursuant to Texas Code of Criminal Procedure article 102.020 was "an unconstitutional tax that violate[d] the [S]eparation of [P]owers clause under the Texas Constitution." 467 S.W.3d at 510–12. In its opinion, the court of criminal appeals explained that "court costs should be related to the recoupment of costs of judicial resources . . . expended in connection with the prosecution of criminal cases within [the] criminal justice system." *Id.* at 517. And the court held that in order to determine whether a court cost assessed against a criminal defendant runs afoul of the Separation of Powers clause, the question is not whether "such costs [are] 'necessary' and 'incidental' to the trial of a criminal case," but rather whether a "statute under which [a] court cost[] [is] assessed (or an interconnected statute) provides for an allocation of such [a] court

---

government. It is the responsibility of this court to preserve this constitutional framework.

. . . . The judiciary may often be denominated as the "third" branch of government, but that does not mean it is third in importance; it is in reality one of three equal branches. As such, the judiciary is an integral part of our government and cannot be impeded in its function . . . .

*Mays v. Fifth Court of Appeals*, 755 S.W.2d 80–81 (Tex. 1988) (Spears, J., concurring) (internal footnotes and quotations omitted).

15

cost[] to be expended for [a] legitimate criminal justice purpose[].” *Id.* at 517–18.

“A criminal justice purpose is one that relates to the administration of our criminal justice system,” and “[w]hether a criminal justice purpose is ‘legitimate’ is a question to be answered on a statute-by-statute/case-by-case basis.” *Id.*

Utilizing the above standard, the court of criminal appeals, in *Peraza*, went on to hold that the criminal defendant in that case had not met his burden of establishing that Texas Code of Criminal Procedure article 102.020, which imposes the “DNA record fee,” could not operate constitutionally under any circumstance. *Id.* at 521. Thus, the court held that article 102.020 was not facially unconstitutional in violation of the Separation of Powers clause of the Texas Constitution.[12] *Id.*

Following *Peraza*, the court of criminal appeals in *Salinas*, as previously discussed, addressed the constitutionality, under the Separation of Powers clause, of Local Government Code section 133.102, which assesses a $133 “Consolidated Court Cost” fee against criminal defendants. 523 S.W.3d at 105–10, 113. There, the court looked at whether “some of the funds [received] from the [‘C]onsolidated [Court Cost’] fee [were] statutorily apportioned to accounts[, namely, the

---

[12]     Certainly, what the court of criminal appeals did *not* do in *Peraza* was hold, as the majority now concludes, that under the Separation of Powers clause “at least two types of fees assessed as court costs are constitutionally permissible: (1) court costs to reimburse criminal justice expenses incurred in connection with that criminal prosecutions and (2) court costs to be expended in the future to off-set future criminal-justice costs.”

16

'comprehensive rehabilitation' account and the 'abused children's counseling' account] that d[id] not serve legitimate criminal justice purposes." *Id.* at 105–07 (noting "[t]he question here is whether the two accounts at issue ('abused children's counseling' and 'comprehensive rehabilitation') meet the requirement that the relevant statutes provide for the allocation of funds 'to be expended for legitimate criminal justice purposes'"). The court ultimately concluded that the funds collected from criminal defendants and allocated to the "comprehensive rehabilitation" account and the "abused children's counseling" account did not qualify as funds to be expended for legitimate criminal justice purposes; and, thus, the court held that, to the extent that Local Government Code section 133.102 allocates funds to those accounts, the statute is facially unconstitutional. *Id.* at 106–10, 113. Notably, in doing so, the court twice emphasized, using broad language, that section 133.102 was unconstitutional because the statute "*fail[ed] to direct the funds to be used in a manner that would make it a court cost (i.e., for something that is a criminal-justice purpose).*" *Id.* at 109 n.26, 110 n.36 (emphasis added).

Although the majority, here, would like to assert that *Salinas* is different from the instant case, it, by doing so, fails to recognize the court of criminal appeals' use of broad language in *Salinas* and the fact that the court did not limit its holding to the circumstances of that case. *See id.* 106–10, 109 n.26, 110 n.36; *see also Johnson*, 2018 WL 1476275, at *4 (recognizing "broad language" employed by *Salinas* court

17

and applying *Salinas* legal standard to "statute [that] is silent as to the allocation of the court costs collected" from criminal defendants). Instead, what is clear after the court of criminal appeals' decision in *Salinas* is that our Court must apply the legal standard utilized in that case (as well as *Peraza*) to appeals involving facial constitutional challenges to court-cost statutes based on violations of the Separation of Powers clause of the Texas Constitution. *See State ex rel. Vance v. Clawson*, 465 S.W.2d 164, 168 (Tex. Crim. App. 1971) ("The Court of Criminal Appeals is the court of last resort in this state in criminal matters. This being so, no other court of this state has authority to overrule or circumvent its decisions, or disobey its mandates." (internal quotations omitted)); *Johnson*, 2018 WL 1476275, at \*4 ("[T]he *Salinas* decision requires us to apply the legal standard in that case to all facial challenges based on the [S]eparation-of-[P]owers provision to court-cost statutes."); *Cervantes-Guervara v. State*, 532 S.W.3d 827, 832 (Tex. App.— Houston [14th Dist.] 2017, no pet.) (when court of criminal appeals "has deliberately and unequivocally interpreted the law in a criminal matter, [the courts of appeals] must adhere to its interpretation"). Thus, after *Salinas*, to avoid being declared facially unconstitutional, in violation of the Separation of Powers clause of the Texas Constitution, a statute that imposes a court cost on a criminal defendant must direct "that the funds [collected pursuant to that statute] be used for something that is a legitimate criminal justice purpose." *Salinas*, 523 S.W.3d at 109 n.26, 110 n.36; *see*

18

*also Peraza*, 467 S.W.3d at 517–18 ("[I]f [a] statute under which court costs are assessed . . . provides for an allocation of . . . court costs to be expended for legitimate criminal justice purposes, then the statute allows for a constitutional application that will not render the courts tax gatherers in violation of the [S]eparation of [P]owers clause." (internal footnote omitted)). This the legal standard to be applied in the instant case.

Turning back to this case, the Court has been asked to determine whether the "Summoning Witness/Mileage" fee assessed against criminal defendants, including appellant, pursuant to Texas Code of Criminal Procedure article 102.011(a)(3) and (b), is facially unconstitutional because it violates the Separation of Powers clause of the Texas Constitution. *See* TEX. CONST. art. II, § 1. Article 102.011(a)(3) and (b) require a defendant "convicted of a felony or misdemeanor" to pay fees for certain services "performed . . . by a peace officer," including "$5 for summoning [each] witness" and "29 cents per mile for mileage required of an officer to perform [the] service . . . and to return from performing that service." *See* TEX. CODE CRIM. PROC. ANN. art. 102.011(a)(3), (b). However, the statute *does not* actually state where the funds received from criminal defendants for the "Summoning Witness/Mileage" fee are to be directed. *See id.*; *see also* Tex Att'y Gen. Op. No. JC-0031 (1999) (noting "[a] myriad of statutes authorize district clerks to collect court fees in criminal and civil cases" and "[s]ome of these statutes earmark court

19

fees for deposit in specific state or county accounts," while "others are *silent* with respect to this issue" (emphasis added) (internal footnotes omitted)). Under such circumstances, the funds collected pursuant to article 102.011(a)(3) and (b) end up in the general fund of the county in which the convicting court serves or the general fund of the State. *Cf. Johnson*, 2018 WL 1476275, at *4 (Code of Criminal Procedure article 102.004, imposing $40 fee on criminal defendant convicted by jury, does not allocate jury fee to any specific fund; and, under such circumstances, defendant and State agreed funds collected were deposited in general fund); *Hernandez*, 2017 WL 3429414, at *6–7 (funds collected from criminal defendants pursuant to Code of Criminal Procedure 102.008(a), which is silent as to where such funds are directed, deposited in general fund of county or city court serves); *see also* Tex Att'y Gen. Op. No. JC-0031 (if fee provision is silent with respect to fee's proper disposition and fee is for official service performed by district clerk, then funds must be deposited in county treasury).

In fact, the Office of Court Administration's website even notes, in regard to article 102.011(a)(3) and (b), that "100% of the money" collected for the "Summoning Witness/Mileage" fee, including appellant's money, remains "with the county or city which the [c]ourt serves" and is directed to that county's or city's "General Fund." *See* Office of Court Administration, *Study of the Necessity of Certain Court Costs and Fees in Texas* (Sept. 1, 2014), at 12, 51 in Criminal Court

20

Costs Section (Fee No. 26, "Peace Officer Fee – Summoning a Witness"; Fee No. 118, "Peace Officer Fee – Mileage"), http://www.txcourts.gov/media/495634/SB 1908-Report-FINAL.pdf; *see also Salinas*, 523 S.W.3d at 110 & n.36 (noting "[t]he [Texas] Comptroller's website says that the money collected for [the] ['] abused children's counseling['] [account] is deposited in the General Revenue Fund"); *Hernandez*, 2017 WL 3429414, at *6. Further, the Office of Court Administration's website explains that if a "peace officer" is employed by the State then "the [c]ity or [c]ounty," which the court serves, "keeps 80% of the ['Summoning Witness/Mileage'] fee," which is then "direct[ed] . . . to the [c]ounty's (or [c]ity's) General Fund," while "[t]he [remaining] 20% of the money [collected for the 'Summoning Witness/Mileage' fee] is sent to the State for deposit in the State's General Revenue Fund."[13]  *See* Office of Court Administration, *Study of the Necessity of Certain Court Costs and Fees in Texas* (Sept. 1, 2014), at 12, 51 in

---

[13]    Although the majority concludes that the Office of Court Administration's website has "limited value," the majority does not assert that the information from the website is inaccurate.  *Cf. Salinas*, 523 S.W.3d at 110 n.36.  Further, article 102.011(a)(3) and (b) are not facially unconstitutional because of the information contained on the Office of Court Administration's website.  Instead, as explained above, in order to pass muster under the Separation of Powers clause of the Texas Constitution, article 102.011(a)(3) and (b), or an interconnected statute, must direct that the funds collected from criminal defendants for the "Summoning Witness/Mileage" fee be expended for something that constitutes a legitimate criminal justice purpose.  Here, the statute simply does not do that; it does not state where the funds collected for the "Summoning Witness/Mileage" fee are to be directed.  Accordingly, the funds collected pursuant to article 102.011(a)(3) and (b) are deposited in the county's general fund or the State's general fund to be used for any legal purpose.  *This* is what renders the statute unconstitutional.

21

Criminal Court Costs Section (Fee No. 26, "Peace Officer Fee – Summoning a Witness"; Fee No. 118, "Peace Officer Fee – Mileage"), http://www.txcourts.gov/media/495634/SB1908-Report-FINAL.pdf; *see also Salinas*, 523 S.W.3d at 110 & n.36. And because the funds received for the "Summoning Witness/Mileage" fee are "directed to the General Fund (at both the State and local level)," they "need not be spent only on law enforcement [purposes]." *See* Office of Court Administration, *Study of the Necessity of Certain Court Costs and Fees in Texas* (Sept. 1, 2014), at 12, 51 in Criminal Court Costs Section (Fee No. 26, "Peace Officer Fee – Summoning a Witness"; Fee No. 118, "Peace Officer Fee – Mileage"), http://www.txcourts.gov/media/495634/SB19 08-Report-FINAL.pdf; *see also Salinas*, 523 S.W.3d at 110 & n.36 (noting "[t]he [Texas] Comptroller's website says that the money collected for [the] [']abused children's counseling['] [account] is deposited in the General Revenue Fund"); *Hernandez*, 2017 WL 3429414, at \*6 (holding Code of Criminal Procedure article 102.008(a) unconstitutional, in violation of Separation of Powers clause, because "it allocates funds to the county's general fund" and those funds spent "for purposes other than legitimate criminal justice purposes"); *Casas*, 524 S.W.3d at 925–27 (Code of Criminal Procedure article 102.0185 unconstitutional, in violation of Separation of Powers clause, where funds collected from "emergency-services cost" allocated to general revenue fund); Tex. Att'y Gen. Op. No. JC-0158 ("Court fees

22

that are used for general purposes are characterized as taxes, and a tax imposed on a litigant . . . violat[es] . . . the constitution."); Tex. Att'y Gen. Op. No. JM-530 (money in county's general fund may be spent on "any proper county purpose").

Thus, in this case, as in *Salinas*, "the constitutional infirmity" is that article 102.011(a)(3) and (b) do not *direct* the funds collected from criminal defendants for the "Summoning Witness/Mileage" fee to be used in a manner that would make them a court cost (i.e., for something that is a legitimate criminal justice purpose).[14] *See* 523 S.W.3d at 109 n.26, 110 n.36; *see also Peraza*, 467 S.W.3d at 517–18 ("[I]f [a] statute under which court costs are assessed . . . provides for an allocation of . . . court costs to be expended for legitimate criminal justice purposes, then the statute allows for a constitutional application that will not render the courts tax gatherers in violation of the [S]eparation of [P]owers clause." (internal footnote

---

[14] It may be helpful to look at the necessary inquiry that we must make in this case as a two-step process. First, we must ask whether article 102.011(a)(3) and (b) direct the funds collected from criminal defendants for the "Summoning Witness/Mileage" fee to a particular "place." Second, if article 102.011(a)(3) and (b) do so direct the funds, we must ask whether that particular "place" fulfills a legitimate criminal justice purpose. As noted above, article 102.011(a)(3) and (b)'s fatal flaw is that they do not actually state where the funds received from criminal defendants for the "Summoning Witness/Mileage" fee are to be directed. *See* TEX. CODE CRIM. PROC. ANN. art. 102.011(a)(3), (b); *Hernandez v. State*, No. 01-16-000755-CR, --- S.W.3d ---, 2017 WL 3429414, at *6–7 (Tex. App.— Houston [1st Dist.] Aug. 10, 2017, no pet. h.) ("The statute does not state where the $25 fee is to be directed."); *cf. Salinas*, 523 S.W.3d at 107–10 (after first noting "Consolidated Court Cost" fee statute directed funds collected to "abused children's counseling" account and "comprehensive rehabilitation" account, then considering whether funds contained in either account are used for legitimate criminal justice purposes).

23

omitted); *Johnson*, 2018 WL 1476275, at \*4–5 ("Under *Salinas*, article 102.004(a)'s failure to direct the funds collected to be used for something that is a legitimate criminal-justice purpose makes the statute facially unconstitutional, in violation of article II, section I of the Texas Constitution."); *Toomer*, 2017 WL 4413146, at \*3; *Hernandez*, 2017 WL 3429414, at \*7; *Casas*, 524 S.W.3d at 927 (because "[n]either the statute authorizing the collection of the emergency-services cost nor its attendant statutes direct the funds to be used for a legitimate, criminal-justice purpose; . . . it is a tax that is facially unconstitutional"); Tex. Att'y Gen. Op. No. JC-0158 ("Court fees that are used for general purposes are characterized as taxes, and a tax imposed on a litigant . . . violat[es] . . . the constitution."). And this means that article 102.011(a)(3) and (b) operate unconstitutionally every time that the "Summoning Witness/Mileage" fee is collected. *See Salinas*, 523 S.W.3d at 109 n.26; *see also Johnson*, 2018 WL 1476275, at \*4–5; *Hernandez*, 2017 WL 3429414, at \*7.

Further, even if "some of the money collected" for the "Summoning Witness/Mileage" fee "may ultimately be spent on something that would [constitute] a legitimate criminal justice purpose," this would not be "sufficient to create a constitutional application of the statute because the actual spending of the money is not what makes a fee a court cost." *Salinas*, 523 S.W.3d at 109 n.26; *see also Johnson*, 2018 WL 1476275, at \*4 ("That funds can be used for a legitimate criminal-justice purpose does not satisfy the *Salinas* legal standard . . . .").

24

Thus, as the court of criminal appeals concluded in *Salinas*, article 102.011(a)(3) and (b) do not direct the funds received from criminal defendants for the "Summoning Witness/Mileage" fee to be expended for a legitimate criminal justice purpose. 523 S.W.3d at 109–10, 109 n.26, 110 n.36; *see also Peraza*, 467 S.W.3d at 517–18 ("[I]f [a] statute under which court costs are assessed . . . provides for an allocation of . . . court costs to be expended for legitimate criminal justice purposes, then the statute allows for a constitutional application that will not render the courts tax gatherers in violation of the [S]eparation of [P]owers clause." (internal footnote omitted)). Accordingly, I would hold that article 102.011(a)(3) and (b) are facially unconstitutional as they "allocate[] [the] funds" received for the "Summoning Witness/Mileage" fee to the general revenue fund of either the county or the State and allow such money to be spent for purposes other than legitimate criminal justice purposes in violation of the Separation of Powers clause of the Texas Constitution.[15] *See Salinas*, 523 S.W.3d at 109–10 ("We cannot uphold the

---

[15] For reasons expressed in previous cases, I would also hold that Texas Code of Criminal Procedure article 102.011(a)(3) and (b) are unconstitutional as applied to appellant because the statute violates his constitutional right to confrontation. *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10 (right to confrontation); TEX. CODE CRIM. PROC. ANN. art. 1.05 (Vernon 2005); *Castello v. State*, No. 01-16-00742-CR, --- S.W.3d ---, 2018 WL 2660520, at *7–13 (Tex. App.—Houston [1st Dist.] June 5, 2018, pet. filed) (Jennings, J., concurring); *London v. State*, 526 S.W.3d 596, 605–12 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (Jennings, J., dissenting). However, I recognize that this Court has already rejected the arguments presented by appellant. *See, e.g.*, *Castello*, 2018 WL 2660520, at *5–7; *Robles v. State*, No. 01-16-00199-CR, 2018 WL 1056482, at *6 (Tex. App.—Houston [1st Dist.] Feb. 27, 2018, pet. ref'd) (mem. op., not designated for

constitutionality of funding th[e] ['abused children's counseling'] account . . . when all the funds in the account go to general revenue."); *Peraza*, 467 S.W.3d at 518 n.17 (agreeing "court costs should [generally] relate to the recoupment of judicial resources").

I would sustain appellant's second issue and modify the trial court's judgment to delete the $200 "Summoning Witness/Mileage" fee from the assessed court costs. *See Cates v. State*, 402 S.W.3d 250, 252 (Tex. Crim. App. 2013) (holding proper remedy when trial court erroneously includes amounts as court costs is to modify judgment to delete erroneous amounts); *Hernandez*, 2017 WL 3429414, at *7. Further, I continue to urge the legislature to reevaluate the fee system currently in place in light of the enormous, and potentially unjustified, burden it too often

publication); *Buford v. State*, No. 01-16-00727-CR, 2017 WL 6759199, at *6–7 (Tex. App.—Houston [1st Dist.] Dec. 28, 2017, pet. ref'd) (mem. op., not designated for publication); *Macias v. State*, 539 S.W.3d 410, 421–24 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd); *London*, 526 S.W.3d at 598–602, 604; *see also Benge v. Williams*, 472 S.W.3d 684, 738 (Tex. App.—Houston [1st Dist.] 2014) (Jennings, J., dissenting from denial of en banc reconsideration) (although "we are not free to disregard binding precedent," as appellate court justices, "we . . . are certainly free to point out any flaws in the reasoning of the [binding] opinions"), *aff'd*, 548 S.W.3d 466 (Tex. 2018); *Jones v. State*, 962 S.W.2d 96, 99 (Tex. App.—Houston 1997) (Taft, J., concurring) (noting although "we are bound by precedent . . . , we are not gagged" by it), *aff'd*, 984 S.W.2d 254 (Tex. Crim. App. 1998); *Precedent*, BLACK'S LAW DICTIONARY (10th ed. 2014) (defining precedent as "a decided case that furnishes a basis for determining later cases involving similar facts or issues").

imposes "on the poorest members of society ensnared in Texas' criminal justice system."[16]

Terry Jennings
Justice

Panel consists of Justices Jennings, Bland, and Brown.

Jennings, J., dissenting.

En banc reconsideration was requested. *See* TEX. R. APP. P. 49.7.

The en banc court has unanimously voted to deny the motion for en banc reconsideration.

En banc court consists of Chief Justice Radack and Justices Jennings, Keyes, Higley, Bland, Massengale, Brown, Lloyd, and Caughey.

Publish. TEX. R. APP. P. 47.2(b).

---

[16] Matt Clarke, *Texas Criminal Court Fees are a Tax on Poor Defendants*, PRISON LEGAL NEWS (Mar. 15, 2014), https://www.prisonlegalnews.org/news/2014/mar/15/texas-criminal-court-fees-are-a-tax-on-poor-defendants/ (because "people who have been convicted of crimes elicit much less sympathy," "the myriad of criminal court fees and their misuses will most likely continue unabated"); *see also* Eric Dexheimer, *Hard-up Defendants Pay as State Siphons Court Fees for Unrelated Uses*, STATESMAN (Sept. 20, 2012), https://www.statesman.com/news/special-reports/hard-defendants-pay-state-siphons-court-fees-for-unrelated-uses/oNyf6HCFKbA4Nlq0UCLiRM/ ("'We're trying to squeeze more money from people who have a hard time getting jobs because they have a criminal record, or have mental illness problems or substance abuse problems' . . . . 'These fees are a tax on the poor.'" (quoting executive director of the Texas Criminal Justice Coalition)).