

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-1042-18

---

### RUBEN LEE ALLEN, Appellant

### v.

### THE STATE OF TEXAS

---

### ON APPELLANT'S AND STATE'S PETITIONS FOR DISCRETIONARY REVIEW
### FROM THE FIRST COURT OF APPEALS
### HARRIS COUNTY

---

SLAUGHTER, J., delivered the opinion of the Court in which KELLER, P.J., KEASLER, HERVEY, RICHARDSON, YEARY, and WALKER, JJ., joined. YEARY, J., filed a concurring opinion. KEEL, J., filed a concurring and dissenting opinion. NEWELL, J., concurred.

## O P I N I O N

This case involves Appellant Ruben Lee Allen's facial challenge to the constitutionality of Texas Code of Criminal Procedure Article 102.011, subsections (a)(3) and (b). That statute assesses court costs against a convicted defendant to recoup law-enforcement expenses incurred in serving and summoning witnesses for the defendant's prosecution. The statute is silent with respect to where the funds are directed once received

by the district clerk.[1]  Appellant argues that because Article 102.011 does not direct the collected fees toward a specific account to be expended for legitimate criminal justice purposes, the statute operates as an impermissible tax on criminal defendants rather than as a permissible court cost, thereby violating the separation of powers provision in the Texas Constitution. As support for his argument, Appellant relies on this Court's precedent in *Peraza v. State* and *Salinas v. State.*[2]

On direct appeal, in its opinion on rehearing,[3] the First Court of Appeals rejected Appellant's facial challenge to the statute. It acknowledged that the statute does not contain any language expressly directing that the collected fees be used for a legitimate criminal justice purpose. But, the court found that because the summoning witness/mileage fee was imposed to reimburse an expense directly incurred by the State in the prosecution of this particular case, it was "unquestionably for a legitimate criminal justice purpose," which renders it a constitutional court cost, as opposed to an impermissible tax.  We agree and affirm.

---

[1]    Appellant, however, produced evidence in the court of appeals showing that the funds are ultimately deposited into the prosecuting county's general fund. *See infra* note 5.

[2]    *See* 467 S.W.3d 508 (Tex. Crim. App. 2015); 523 S.W.3d 103 (Tex. Crim. App. 2017).

[3]    In its original opinion on direct appeal, a panel of the First Court of Appeals affirmed Appellant's conviction, but held that the challenged subsections of Article 102.011 were facially unconstitutional in violation of the separation of powers clause. *Allen v. State*, No. 01-16-00768-CR, 2017 Tex. App. LEXIS 11015 (Tex. App.—Houston [1st Dist.] Nov. 28, 2017).  The State then filed a motion for *en banc* reconsideration.  Although the State's motion was denied, the panel withdrew its original opinion and issued a new opinion on rehearing in which it upheld Article 102.011 over Appellant's facial challenge. *Allen v. State,* 570 S.W.3d 795 (Tex. App.—Houston [1st Dist.] 2018) (op. on reh'g).  It is this opinion on rehearing that is under review in the instant proceeding.

## I.  Background Facts and Procedural Posture

Appellant was convicted by a jury of aggravated robbery with a deadly weapon.  In the judgment of conviction, the trial court ordered Appellant to pay court costs, which included a $200 charge for a "summoning witness/mileage" fee.  *See* TEX. CODE CRIM. PROC. art. 102.011(a)(3), (b) (providing that a convicted defendant "shall pay" fees "for services performed in the case by a peace officer," including a fee of $5 per witness summoned plus a fee for the officer's mileage to deliver the summons).[4]

---

[4]  Article 102.011 permits imposition of costs against a convicted defendant for a variety of services performed by a peace officer in connection with a criminal prosecution.  The relevant portion of the statute imposing the summoning witness/mileage fee states,

> (a) A defendant convicted of a felony or a misdemeanor shall pay the following fees for services performed in the case by a peace officer: . . .
>
> (3) $5 for summoning a witness;
>
> (b) In addition to fees provided by Subsection (a) of this article, a defendant required to pay fees under this article shall also pay 29 cents per mile for mileage required of an officer to perform a service listed in this subsection and to return from performing that service. . . . The defendant shall also pay all necessary and reasonable expenses for meals and lodging incurred by the officer in the performance of services under this subsection, to the extent such expenses meet the requirements of Section 611.001, Government Code. This subsection applies to:
>> . . . .
>> (3) traveling to execute criminal process, to summon or attach a witness, and to execute process not otherwise described by this article.

TEX. CODE CRIM. PROC. art. 102.011(a)(3), (b).

During the 86th legislative session, the Legislature amended Article 102.011 to add the word "reimbursement" in front of the word "fees" throughout the statute.  *See* Act of May 23, 2019, 86th Leg., R.S., ch. 1352 §§ 2.28, 2.29, effective Jan 1, 2020.  Because that amendment was not in effect at the time that Appellant was ordered to pay court costs, we consider the pre-amendment version of the statute in this opinion.

On direct appeal, Appellant complained that the statute imposing the $200 summoning witness/mileage fee facially violated the separation of powers clause in the Texas Constitution. Relying on *Peraza* and *Salinas*, he argued that because the funds received were not statutorily directed toward a designated fund to be used for a criminal justice purpose and instead were deposited into the county's general fund,[5] the fee was an unconstitutional tax collected by the judiciary. Appellant claimed that this Court's precedent mandates that any statute imposing court costs must always direct the collected funds to be expended for legitimate criminal justice purposes, otherwise the statute violates the separation of powers clause.

The court of appeals disagreed with Appellant's interpretation of *Peraza* and *Salinas*. *Allen v. State*, 570 S.W.3d 795, 804 (Tex. App.—Houston [1st Dist.] 2018) (op. on reh'g). The court observed that long before *Peraza* and *Salinas,* this Court had approved of court costs that were for the reimbursement of expenses incurred during a defendant's trial, so long as such costs were "'necessary' and 'incidental' to the trial of a criminal case." *Id.* at 804 (citing *Peraza v. State*, 467 S.W.3d 508, 517 (Tex. Crim. App. 2015) (discussing standard

---

[5]  To show that the collected fees were deposited into the county's general fund, Appellant presented a 2014 report from the Office of Court Administration. *See Study of Necessity of Certain Court Costs and Fees in Texas,* STATE OF TEXAS OFFICE OF COURT ADMINISTRATION (Sept. 1, 2014), https://www.txcourts.gov/media/495634/SB1908-Report-FINAL.pdf. With respect to funds received pursuant to Article 102.011(a)(3) and (b), the report indicates that generally, 100% of the funds stay with the city or county which the court serves, and "the money goes to the general fund of the county or city." *Id.* at 12, 51-52. Regarding the purpose for the fees, the report states, "The intent of the statute is to reimburse peace officers for their work in connection with the case. However, the money is directed to the General Fund (at both the State and local level.[)]  Thus, the money need not be spent only on law enforcement." *Id.*

from *Ex parte Carson*, 159 S.W.2d 126, 130 (Tex. Crim. App. 1942) (op. on reh'g))). *Peraza*, the court found, then expanded the scope of constitutionally-permissible court costs beyond this necessary/incidental standard to also include non-reimbursement-type court costs (e.g., those untied to the particular prosecution of the defendant that are to be expended in the future to offset legitimate criminal-justice costs). *Id.* at 805 (citing *Peraza*, 467 S.W.3d at 517-18). The court noted that although *Peraza* expanded the scope of permissible court costs beyond the previous necessary/incidental standard, nothing about this expansion undermined the continued constitutionality of reimbursement-based costs, which remained "proper and facially valid." *Id.* at 804-05.

In examining *Salinas*, the court of appeals viewed that decision as clarifying that a statute imposing costs to offset future criminal justice expenses must expressly allocate those funds toward an account "'to be expended for legitimate criminal justice purposes,'" otherwise the statute violates separation of powers. *Id.* at 805-06 (quoting *Salinas v. State*, 523 S.W.3d 103, 109 (Tex. Crim. App. 2017)). But the court reasoned that this requirement from *Salinas* did not apply to reimbursement-based court costs, and instead applied only to the type of cost that had been at issue in that case—a fee to be expended to offset future criminal justice expenses. *Id.* at 807. Thus, it concluded that *Salinas* did not apply to Appellant's case because the summoning witness/mileage fee was a reimbursement of expenses incurred in Appellant's prosecution, rather than a collection of funds for future criminal justice expenses. *Id.*

Based on this view of our precedent, the court of appeals upheld the summoning witness/mileage fee as "an expense incurred by the State in the prosecution of this particular case [which] is unquestionably for a legitimate criminal justice purpose." *Id.* The court further held that "the Legislature's failure to require that the monies be deposited into a segregated account does not make the courts tax gatherers when the fee is directly tied to reimbursement for past judicial expenses incurred in the case." *Id.* at 808.

Disagreeing with the court of appeals' decision, Appellant filed a petition for discretionary review. The State cross-petitioned. We granted a single ground in each party's petition to address the following issues:

1.  For the Appellant: Whether the First Court of Appeals erred when it misinterpreted *Peraza* and failed to apply *Salinas* in upholding the summoning witness/mileage fee statute even though the statute does not direct the funds collected to be used for a legitimate criminal justice purpose?

2.  For the State: Whether this Court should overrule *Carson*, *Peraza*, and *Salinas* and find that there should be no limitations on the Legislature's ability to assess court costs?

## II.    Analysis

In this opinion, we solely address Appellant's issue, and we agree with the court of appeals' conclusion that the summoning witness/mileage fee does not violate separation of powers principles. Because the statute imposes a fee to reimburse the government for expenses directly incurred in connection with a defendant's prosecution, the fee falls within the core category of reimbursement-based court costs that this Court has long recognized as

constitutionally permissible, regardless of how the fees are spent once collected. The statute's failure to direct the funds to be expended for a legitimate criminal justice purpose in the future does not render the courts tax gatherers in violation of separation of powers.

With respect to the State's cross-petition, we have determined, based on our review of the parties' arguments and the specific nature of the statute at issue in this case, that the State's issue was improvidently granted. Therefore, we dismiss the State's petition for discretionary review. After reviewing the applicable law below, we explain these conclusions in turn.

### A. Applicable Law

Because Appellant challenges the constitutionality of Code of Criminal Procedure Article 102.011, Subsections (a)(3) and (b), he bears the burden of establishing the statute's unconstitutionality. *Peraza*, 467 S.W.3d at 514 (citing *Ex parte Granviel*, 561 S.W.2d 503, 511 (Tex. Crim. App. 1978)). When considering a statute's constitutionality, we begin with the presumption that the statute is valid. *Id.*; *see also* TEX. GOV'T CODE § 311.021 ("In enacting a statute, it is presumed that . . . compliance with the constitutions of this state and the United States is intended[.]"). From there, we "seek to interpret [the] statute such that its constitutionality is supported and upheld[,]" and we "must make every reasonable presumption in favor of [its] constitutionality, unless the contrary is clearly shown." *Peraza,* 467 S.W.3d at 514 (citing *Luquis v. State*, 72 S.W.3d 355, 365 n.26 (Tex. Crim. App. 2002); *Granviel*, 561 S.W.2d at 511).

With the statute's presumed constitutionality, Appellant already faces a high burden.

But because Appellant has launched a facial challenge, he bears an even greater burden. "'A facial challenge is an attack on a statute itself as opposed to a particular application.'" *Id.* (quoting *City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2449 (2015)); *Salinas,* 523 S.W.3d at 106. Such a challenge requires Appellant to establish that "no set of circumstances exists under which [the] statute would be valid." *Peraza*, 467 S.W.3d at 514; *see also State v. Rosseau,* 396 S.W.3d 550, 557 (Tex. Crim. App. 2013) ("[T]o prevail on a facial challenge, a party must establish that the statute always operates unconstitutionally in all possible circumstances.").[6] Thus, if there is any possible constitutional application of the statute, then Appellant's facial challenge fails. *Peraza,* 467 S.W.3d at 515-16. Given this high burden, a facial challenge is "the most difficult challenge to mount successfully." *United States v. Salerno,* 481 U.S. 739, 745 (1987).

Appellant's facial challenge is rooted in the separation of powers provision of the Texas Constitution. TEX. CONST. art. II, § 1. This provision expressly guarantees that our three branches of government—legislative, executive, and judicial—are separate and distinct branches, "and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others" unless expressly permitted in the Constitution. *Id.* "This division ensures that power granted one branch may be exercised by only that branch, to the exclusion of the others." *Ex parte Lo,* 424 S.W.3d 10, 28 (Tex.

---

[6] When assessing whether a statute meets this standard, we consider only applications of the statute based on what the statute actually authorizes or prohibits; we do not consider irrelevant applications. *Peraza,* 467 S.W.3d at 515 (citing *Patel*, 135 S. Ct. at 2451).

Crim. App. 2013) (op. on State's motion for reh'g). One way the separation of powers provision is violated is when "one branch of government assumes or is delegated a power 'more properly attached' to another branch." *Id*. (quoting *Ex parte Gill,* 413 S.W.3d 425, 431-32 (Tex. Crim. App. 2013)).[7]

Appellant's argument that the summoning witness/mileage fee violates the separation of powers clause stems from the fact that the judicial branch, under the Texas Constitution, has no taxing authority. *See* TEX. CONST. art. V. The authority to impose taxes is vested in the legislative branch, and the authority to collect taxes is delegated to the executive branch. *Id.* arts. III, IV, VIII. In view of this division of power, we have held that "[t]he courts are delegated a power more properly attached to the executive branch if a statute turns the courts into 'tax gatherers[.]'" *Salinas*, 523 S.W.3d at 107 (citing *Peraza*, 467 S.W.3d at 517). But we have further recognized that, under certain circumstances, a court's collection of fees in a criminal case is a proper part of the judicial function and does not constitute an impermissible tax. *Id.* Three of our previous decisions are relevant to determining this dividing line between an impermissible tax and a permissible court cost: *Ex parte Carson*, *Peraza v. State,* and *Salinas v. State*.

### *Ex parte Carson*

---

[7] We have observed that the separation of powers provision is also violated when one branch of government "unduly interferes with another branch so that the other branch cannot effectively exercise its constitutionally assigned powers." *Ex parte Lo*, 424 S.W.3d 10, 28 (Tex. Crim. App. 2013) (op. on reh'g) (citing *Ex parte Gill*, 413 S.W.3d 425, 431-32 (Tex. Crim. App. 2013)). Appellant's challenge to Article 102.011 presents a claim of improper delegation or assumption of power, rather than a claim of undue interference with another branch. Accordingly, we focus only on the former type of alleged separation of powers violation in this opinion.

In 1942, this Court held in *Ex parte Carson* that for a court cost to be legitimate it must be "necessary" or "incidental" to the trial of a criminal defendant. 159 S.W.2d 126, 130 (Tex. Crim. App. 1942) (op. on motion for reh'g). In *Carson*, the Court considered the constitutionality of a statute imposing a $1 fee on criminal defendants and directing the collected monies into a fund for a county law library. *Id.* at 127 (noting that funds were to be used "for certain costs and expenses in acquiring, maintaining and operating a law library available to the judges of the courts and to the attorneys of litigants in the courts") (orig. op.). Concluding that this fee was too "remote" from the prosecution to "be logically considered a proper item of cost[,]" the Court struck down the statute. *Id.* It reasoned that such cost was "neither necessary nor incidental to the trial of a criminal case, and that it [was] not a legitimate item to be so taxed[.]" *Id.* at 130. Although *Carson* did not state that its holding was based on separation of powers principles, its standard would later be cited as the "litmus test" for establishing whether a court cost comported with the separation of powers clause. *See Peraza,* 467 S.W.3d at 517.

### Peraza

More than seventy years later, this Court revisited *Carson*'s "necessary" or "incidental" standard in *Peraza v. State*, 467 S.W.3d at 515. *Peraza* involved a facial separation of powers challenge to a statute assessing a $250 "DNA Record Fee" against defendants convicted of certain crimes, including Peraza who was convicted of aggravated

sexual assault of a child. *Id.* at 511; *see* TEX. CODE CRIM. PROC. art. 102.020.[8]  Under the statute, 35 percent of the funds were directed to the state highway fund, and 65 percent were directed to the criminal justice planning account in the general revenue fund. *Peraza,* 467 S.W.3d at 511; *see* TEX. CODE CRIM. PROC. art. 102.020(h).  Peraza argued that the collected fees were being used for services that were "neither necessary nor incidental to the trial of a criminal case," as required by *Carson*, and therefore constituted an unconstitutional tax. *Peraza*, 467 S.W.3d at 512-13.

In upholding the statute over Peraza's facial challenge, this Court first examined the "necessary" or "incidental" standard from *Carson* and concluded that it had become too restrictive in light of intervening changes to our criminal justice system. *Id.* at 517.  The Court reaffirmed the general principle that "court costs should be related to the recoupment of costs of judicial resources." *Id.* But it further observed that in the decades since *Carson* was decided, "the prosecution of criminal cases and our criminal justice system have greatly evolved." *Id.*  Accordingly, the Legislature had enacted a scheme of costs "with the intention of reimbursing the judicial system for costs incurred in the administration of the criminal justice system." *Id.*  Given these considerations, the Court reasoned that to continue to require court costs to be necessary or incidental to the trial of a criminal case "ignores the legitimacy of costs that, although not necessary to, or an incidental expense of, the actual trial

---

[8]      Article 102.020, entitled "Costs Related to DNA Testing," provides that individuals convicted of certain specified offenses shall pay the costs of collecting a DNA specimen and maintaining a DNA record. TEX. CODE CRIM. PROC. art. 102.020; *see also* TEX. GOV'T CODE § 411.1471 (listing offenses triggering DNA record fee requirement).

of a criminal case, may nevertheless be directly related to the recoupment of costs of judicial resources expended in connection with the prosecution of criminal cases within our criminal justice system." *Id.* Thus, the Court held that it would no longer limit the scope of constitutionally-permissible court costs to only those that were "necessary" or "incidental" to the trial of a criminal case. *Id.* Instead, it explained:

> [I]f the statute under which court costs are assessed (or an interconnected statute) provides for an allocation of such court costs to be expended for legitimate criminal justice purposes, then the statute allows for a constitutional application that will not render the courts tax gatherers in violation of the separation of powers clause. A criminal justice purpose is one that relates to the administration of our criminal justice system. Whether a criminal justice purpose is "legitimate" is a question to be answered on a statute-by-statute/case-by-case basis.

*Id*. at 517-18 (footnotes and citations omitted).

In applying this new standard, the Court analyzed both of Article 102.020's allocations and concluded that both passed constitutional muster because each of the accounts allocated resources "to be expended for legitimate criminal justice purposes." *Id.* at 518-21. Accordingly, the Court upheld the DNA record fee statute as facially constitutional. *Id.* at 521.

### *Salinas*

This Court once again considered a facial separation of powers challenge to a statute imposing court costs in *Salinas v. State*, 523 S.W.3d at 108-09. The statute at issue in *Salinas* was a consolidated fee statute that imposed a flat fee of $133 for a felony conviction and then disbursed the money into fourteen different state accounts according to percentages

dictated by the statute. *Id*. at 105; *see* TEX. LOCAL GOV'T CODE § 133.102. The fee did not seek to recoup funds expended during Salinas' prosecution, but was instead imposed to provide future funding for the various accounts identified by the statute. Salinas challenged the statute as facially unconstitutional by arguing that two of the fourteen accounts listed, the "abused children's counseling" account and the "comprehensive rehabilitation" account, were not sufficiently related to the criminal justice system. *Salinas*, 523 S.W.3d at 105-06. Thus, he contended the statute was unconstitutional in its entirety because some of the funds were statutorily apportioned to accounts that did "not serve legitimate criminal justice purposes." *Id.* at 106.

In resolving this matter, this Court relied on *Peraza* and observed that, although a statute that turns the courts into "tax gatherers" violates separation of powers, "the collection of fees in criminal cases is a part of the judicial function 'if the statute under which court costs are assessed (or an interconnected statute) provides for an allocation of such court costs to be expended for legitimate criminal justice purposes.'" *Id.* at 107 (citing and quoting *Peraza,* 523 S.W.3d at 517). The Court further added that the answer to this question is "determined by what the governing statute says about the intended use of the funds, not whether the funds are actually used for a criminal justice purpose." *Id.*

In analyzing the two challenged accounts, the Court examined where the allocated funds were channeled under the statute. Ultimately, the Court determined that neither of the challenged allocations constituted funds that would serve legitimate criminal justice

purposes, and therefore concluded that both allocations violated the separation of powers clause. *Id.* at 107-110. Rather than strike down the statute in its entirety, the Court determined the statute could be saved by severing the invalid provisions allocating funds to the impermissible accounts. *Id.* at 111.

### B. The summoning witness/mileage fee is not unconstitutional on its face.

Having examined the Court's precedent, we now consider the facial constitutional challenge that is at issue in this case. We first note that the court of appeals correctly observed that "neither [*Peraza* nor *Salinas*], individually or collectively, explicitly addresses whether a court cost linked to an expense incurred in the past in the criminal prosecution of the defendant and collected to reimburse the cost of actually expended judicial resources must also be specifically directed to a future use that is a criminal justice purpose." *Allen,* 570 S.W.3d at 806. We address that issue now and conclude that a reimbursement-based court-cost statute need not direct the collected funds to be expended for a criminal justice purpose in order to comport with separation of powers principles.

Appellant's position that the summoning witness/mileage fee is unconstitutional in light of *Peraza* and *Salinas* is based on an erroneous interpretation of those decisions. *Peraza*'s expansion of constitutionally-permissible court costs beyond those that are "necessary" or "incidental" to a trial signaled that costs that are untied to the particular defendant's prosecution would pose no separation of powers problem, so long as the funds are intended to be used for future legitimate criminal justice purposes. *Peraza,* 467 S.W.3d

at 517-18. Nothing about that expansion, however, undermines the continued viability of reimbursement-type court costs. Given this, the court of appeals was correct in finding that *Peraza* implicitly recognized two types of constitutionally-permissible court costs: (1) those that reimburse criminal justice expenses incurred in connection with the defendant's particular criminal prosecution, and (2) those that are to be expended to offset future criminal justice costs. *See Allen*, 570 S.W.3d at 805.

Following *Peraza*, *Salinas* solely addressed the second category of court costs—those to be expended in the future to offset the general costs of running the criminal justice system. *Salinas*, 523 S.W.3d at 107. *Salinas* held that a statute assessing costs for future expenses (or an interconnected statute) must expressly direct the collected fees to be expended for a legitimate criminal justice purpose. *Id.* But *Salinas* did not, either expressly or implicitly, purport to address the requirements for reimbursement-based court costs that seek to recoup expenses actually and directly incurred in the prosecution of the defendant's case. Thus, contrary to Appellant's contention, *Salinas* did not erect a new requirement that all court-cost statutes, including those imposing reimbursement-type costs, must explicitly allocate funds to be expended in the future for legitimate criminal justice purposes. *Salinas* applies only to the type of cost that was at issue in that case—a cost imposed to offset future criminal justice expenses.

Having determined that the allocating/directing language from our recent decisions is inapplicable to reimbursement-based court costs, what remains is our longstanding

recognition that such costs are legitimate when they are imposed to recoup expenses incurred during a defendant's prosecution. *See Carson,* 159 S.W.2d at 130. Although *Carson* did not directly consider separation of powers principles, Appellant has not pointed to any reason why *Carson* was wrongly decided in light of separation of powers principles. Furthermore, aside from relying on the language in *Peraza* and *Salinas*, Appellant has presented no compelling argument as to why this Court should now hold that reimbursement-based court costs must direct collected funds toward legitimate criminal justice purposes in order to avoid a separation of powers violation.[9] Given that Appellant bears the burden of establishing his constitutional challenge, we decline to impose such a new restriction on reimbursement-based court costs in the absence of any compelling reason for doing so.

Therefore, we resolve Appellant's ground for review by holding that reimbursement-based court costs pose no separation of powers problem, regardless of where the funds are directed once received. When a court-cost statute seeks to recoup expenses legitimately

---

[9] The closest Appellant comes in this regard is his argument that, in the absence of any directing/allocating requirement, "the government could exact money from criminal defendants ostensibly for a legitimate criminal justice purpose, but direct the money towards a non-criminal justice purpose such as the pavement of a road." Appellant's Brief on Discretionary Review, at 15. But Appellant fails to explain why, in the case of reimbursement-based costs, such a scenario would render the courts tax gatherers in violation of separation of powers. Because the expenses have already been incurred by the government, the repayment of those expenses does not constitute a tax *per se. See City of Austin v. Nalle,* 120 S.W. 996 (Tex. 1909) ("'Taxes are defined to be burthens, or charges, imposed by the legislative power of a state upon persons or property, *to raise money for public purposes.*'") (quoting *Clegg v. State*, 42 Tex. 608 (1874)) (emphasis added). Furthermore, "[t]he mere fact that revenues are put into a general fund and used for public purposes . . . does not necessarily make them taxes." *City of San Antonio v. San Antonio Independent School Dist.,* 683 S.W.2d 67, 70 (Tex. App.—San Antonio 1984). In view of these principles, we decline to hold that reimbursement-based court costs violate the separation of powers provision simply because the government may ultimately use the funds for non-criminal-justice purposes.

incurred in connection with the prosecution of a defendant's criminal case, then the collection of such fees is a proper part of the judicial function and does not render the courts tax gatherers in violation of the separation of powers clause. And this is true without reference to where the funds are directed or what they are ultimately used for once collected.

Turning to the statutory provisions at issue here, Article 102.011(a)(3) and (b) seek to reimburse the expenses and mileage actually incurred by peace officers in serving process on witnesses needed for the defendant's proceedings. *See* TEX. CODE CRIM. PROC. art. 102.011(a) ("A defendant convicted of a felony or a misdemeanor shall pay the following fees *for services performed in the case* by a peace officer: . . .") (emphasis added). It is undisputed that such costs are for the reimbursement of expenses directly incurred in a defendant's prosecution. The legitimate purpose of the fee is satisfied as soon as the expenses are incurred by the peace officer performing the services. After the defendant pays the statutory costs to reimburse these expenses, the collected costs do not have to also serve a legitimate criminal justice purpose in the way they are used after collection, and the statute need not specify how the collected funds will be used. Accordingly, the challenged subsections of Article 102.011 are not facially unconstitutional, and we reject Appellant's facial challenge to the statute.

### C. The State's petition for discretionary review was improvidently granted.

We also granted the State's petition for discretionary review. The ground upon which we granted review asked this Court to consider overruling its precedent in *Carson*, *Peraza*,

and *Salinas*, effectively eliminating all limitations on court costs stemming from separation of powers principles. Upon further consideration, we decline at this time the State's invitation to reconsider our precedent in this area.

The basis for the State's position is that the approach established by our decisions is inconsistent with the original understanding of the Texas Constitution. According to the State, that original understanding permitted the government "to recoup the amount it had spent on the trial, and there were no restrictions on how that money would be spent" once collected. *State's Brief on Cross-Petition*, at 12. Thus, to uphold this principle, the State proposes that this Court should eliminate any limitations on how monies collected as court costs are expended by the government, so long as the total amount collected does not exceed the cost of prosecution. *Id.* at 44.

Our holding today with respect to reimbursement-based court costs is entirely consistent with the State's proposed approach. We agree with the State's basic position that where the challenged statute involves the recoupment of expenses directly incurred as a result of a defendant's prosecution, the separation of powers clause imposes no limitations on how the funds are used once collected. Given our agreement with the State on this point and our decision to uphold the summoning witness/mileage fee by applying this reasoning, it would be imprudent in the instant case to conduct any further analysis of the State's contentions.

To the extent the State seeks to challenge the portion of *Peraza* and *Salinas* addressing the requirements for non-reimbursement-type court cost statutes (e.g., those that collect a fee

untied to the particular defendant's prosecution to fund future legitimate criminal justice expenses), that issue is not directly implicated here. As discussed above, the instant case concerns a reimbursement-type statute that does not trigger any allocating requirement. Because this aspect of our precedent has no bearing on our analysis of the summoning witness/mileage fee, it would be improper for us to consider the State's challenge to this rule in this case. We decline to do a freestanding reevaluation of our precedent where the challenged rule has no application to the situation at hand. Accordingly, we dismiss the State's petition for discretionary review as improvidently granted. *See* TEX. R. APP. P. 69.3.

## III. Conclusion

We conclude that Appellant has failed to meet his burden to establish that the summoning witness/mileage fee, on its face, violates the separation of powers clause. We affirm the judgment of the court of appeals.

Delivered: November 20, 2019

Publish