

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

## No. 02-25-00025-CR

———————————————————

ROBERT TAYLOR KRIEG, Appellant

V.

THE STATE OF TEXAS

———————————————————

On Appeal from Criminal District Court No. 1
Tarrant County, Texas
Trial Court No. 1675721

———————————————————

Before Birdwell, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Birdwell

# MEMORANDUM OPINION

Appellant Robert Taylor Krieg appeals the trial court's judgment adjudicating him guilty of unlawful restraint with exposure to serious bodily injury and sentencing him to three years' confinement. *See* Tex. Penal Code Ann. § 20.02(c)(2)(A). In multiple overlapping issues and subissues, he challenges (1) the sufficiency of the evidence supporting the revocation of his deferred adjudication community supervision, including the admission of "inadmissible and unreliable evidence"; (2) the trial court's alleged bias or "lack of attention"; and (3) the imposition of sex-offender evaluation and treatment conditions in violation of his due-process rights.[1] Because the trial court did not abuse its discretion by revoking Krieg's community supervision and adjudicating him guilty, we affirm.

## I. Background

Krieg was charged with sexual assault, indecency with a child by sexual contact, and unlawful restraint with exposure to serious bodily injury—all arising from the same underlying facts and alleging the same victim.[2] Pursuant to a plea bargain, the State waived the sexual-assault and indecency charges, Krieg pled guilty to unlawful restraint with exposure to serious bodily injury, and the trial court sentenced him to

---

[1]We lay out the issues in Krieg's brief as we have construed them. Indeed, some of the arguments in the brief are hard to follow, and it is not clear precisely which of the trial court's grounds for revocation Krieg challenges.

[2]The underlying facts involved Krieg's having choked his victim during a sexual encounter.

2

five years' deferred adjudication community supervision. Among the conditions of his community supervision, Krieg was required to submit to a sex-offender treatment evaluation; to attend, fully participate in, and successfully complete sex-offender treatment; to "[a]ssume responsibility" for his offense; and to pay monthly community supervision fees. There is no record that Krieg objected to these conditions at the time they were imposed.

Approximately two years later, Krieg was unsuccessfully discharged from his sex-offender treatment program, and the State filed a petition to proceed to adjudication. In its petition, the State alleged that Krieg had violated the terms and conditions of his community supervision by (1) being unsuccessfully discharged from sex-offender treatment; (2) failing to take responsibility for his offense; and (3) failing to pay monthly community supervision fees for several months from July 2022 to February 2024.

At the contested hearing on the State's petition to adjudicate, Krieg pled not true to the allegations that he had been unsuccessfully discharged from sex-offender treatment and that he had failed to take responsibility for his offense. He pled true to the allegation that he had failed to pay monthly community supervision fees.[3] During the State's case, Sean Braun, a licensed professional counselor and licensed sex-offender treatment provider who supervised Krieg's sex-offender evaluation and

_____

[3]Although Krieg pled true to this violation and does not challenge it directly on appeal, we will not reach it based on our disposition below. *See* Tex. R. App. P. 47.1.

treatment, described Krieg's evaluation and treatment and explained that Krieg was discharged from treatment because he violated the conditions of his "treatment contract." During the defense's case, Robert Buker, Krieg's father, testified that he did not agree with the terms of Krieg's community supervision and that his son had done nothing wrong. Rather, Buker blamed Krieg's "circumstances" on the victim, the attorney who had represented Krieg at the time that he pled guilty to the offense, and the trial judge, whom Buker had referred to as "a piece of crap."

The trial court found all three alleged violations true, revoked Krieg's community supervision, adjudicated him guilty of unlawful restraint with exposure to serious bodily injury, and sentenced him to three years' confinement.

## II. Standard of Review and Applicable Law

We review a trial court's decision to adjudicate guilt with the same standard we use to review a trial court's decision to revoke community supervision. *See* Tex. Code Crim. Proc. Ann. art. 42A.108(b). We review a trial court's decision to revoke community supervision for an abuse of discretion. *Powe v. State*, 436 S.W.3d 91, 93 (Tex. App.—Fort Worth 2014, pet. ref'd). In a revocation proceeding, the State must prove by a preponderance of the evidence that the defendant violated at least one of the terms and conditions of his community supervision. *Bryant v. State*, 391 S.W.3d 86, 93 (Tex. Crim. App. 2012); *Rickels v. State*, 202 S.W.3d 759, 763–64 (Tex. Crim. App. 2006).

The trial court is the sole judge of the witnesses' credibility and the weight to be given their testimony, and we review the evidence in the light most favorable to the trial court's ruling. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013); *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). If the State meets its burden of proof, the trial court's finding of a single violation of a condition of community supervision is sufficient to support adjudication. *Garcia v. State*, 387 S.W.3d 20, 26 (Tex. Crim. App. 2012); *Leach v. State*, 170 S.W.3d 669, 672 (Tex. App.—Fort Worth 2005, pet. ref'd).

Due process is implicated in the revocation of community supervision because it involves the loss of liberty. *Caddell v. State*, 605 S.W.2d 275, 277 (Tex. Crim. App. [Panel Op.] 1980). It would offend due process if a defendant were discharged from his therapy program for a wholly inappropriate reason and that reason were then used as a basis to revoke the defendant's community supervision. *Leonard v. State*, 385 S.W.3d 570, 577 (Tex. Crim. App. 2012) (op. on reh'g). If a defendant's compliance with the terms of his community supervision is dependent on the discretion of a third party, we must also examine the third party's use of its discretion to confirm that the discharge was for a reason connected to the purpose of the defendant's community supervision. *Id.*

## III. Analysis

Krieg asserts that the evidence was insufficient to support the revocation of his deferred adjudication community supervision. He argues that the trial court relied on

5

inadmissible and unreliable evidence to revoke his community supervision, that the trial court "displayed bias and lack of attention during hearings," and that the revocation violated his right to due process "because he was set up for failure from the beginning."

From what we can glean from Krieg's brief, he attempts to challenge the imposition of community supervision conditions related to his sex-offender evaluation and treatment.[4] Indeed, the argument woven throughout his brief is that he should not have been required to undergo a sex-offender evaluation or participate in sex-offender treatment.

## A. Unobjected-To Conditions of Community Supervision

Krieg argues that, due to his "medical conditions"[5] and because he did not "plead[] to a sex crime," neither the conditions of his community supervision related to sex-offender evaluation and treatment nor his dismissal from sex-offender treatment were justified. He contends that "[h]e was treated as and forced to accept

---

[4]Most of Krieg's brief discusses the administration of a penile plethysmograph (PPG) test that he underwent as part of his sex-offender evaluation. *See S.V. v. R.V.*, 933 S.W.2d 1, 13 (Tex. 1996) (observing that a PPG test is "a test for determining what subjects cause arousal in a man"). In each section of his brief and within each issue, Krieg mentions the PPG test in at least some capacity—the test itself, his being "forced" to undergo the test, the test's results and their reliability and admissibility, his sex-offender treatment based on the results, and alleged judicial bias related to the results.

[5]Krieg asserts that his conditions—ADHD, anxiety, depression, below-average IQ, and a heart condition requiring a Viagra prescription—were "directly relevant to [his] ability to comply" with his community supervision requirements.

6

that he was a sexual predator" in violation of his due-process rights. Because Krieg did not raise his complaints when the community supervision conditions were imposed, he has forfeited them.

### 1. Preservation of Error

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion sufficiently stating the specific grounds, if not apparent from the context, for the desired ruling. Tex. R. App. P. 33.1(a)(1); *Montelongo v. State*, 623 S.W.3d 819, 822 (Tex. Crim. App. 2021). The party must then obtain an express or implicit adverse trial-court ruling or object to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Dixon v. State*, 595 S.W.3d 216, 223 (Tex. Crim. App. 2020). Because it is a systemic requirement, this court should independently review error preservation, and we have a duty to ensure that a claim is properly preserved in the trial court before we address its merits. *Dixon*, 595 S.W.3d at 223.

Community supervision conditions must be challenged when they are imposed. *Speth v. State*, 6 S.W.3d 530, 534–35 (Tex. Crim. App. 1999); *Donovan v. State*, 508 S.W.3d 351, 357 (Tex. App.—Fort Worth 2014) (op. on reh'g), *aff'd*, No. PD-0474-14, 2015 WL 4040599 (Tex. Crim. App. July 1, 2015) (not designated for publication). If a defendant fails to complain of a condition at the time it is imposed, the complaint is forfeited. *Gutierrez-Rodriguez v. State*, 444 S.W.3d 21, 23–24 (Tex. Crim. App. 2014); *Speth*, 6 S.W.3d at 534–35. *But see Rickels v. State*, 108 S.W.3d 900, 902 (Tex. Crim.

7

App. 2003) (recognizing exception to the general rule of error preservation when the defendant does not have the opportunity to object to the condition at the time it is imposed). Further, a defendant forfeits a constitutional complaint by not raising it at the time the community supervision conditions are imposed. *Donovan*, 508 S.W.3d at 354, 357; *see Golliday v. State*, 560 S.W.3d 664, 670–71 (Tex. Crim. App. 2018); *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012).

## 2. Error Not Preserved

The record shows that Krieg has forfeited his complaints. As part of his guilty plea, Krieg agreed to the sex-offender evaluation—part of which included a PPG test—and to sex-offender treatment, even though he pled guilty only to unlawful restraint, a facially nonsexual offense that, as here, may involve a sexual component. The conditions of his community supervision were initially imposed on June 10, 2022. The relevant condition required Krieg to "[s]ubmit to sex[-]offender treatment evaluation as directed by the supervision officer" and to "[a]ttend and participate fully in and successfully complete . . . treatment . . . for sex offenders . . . as specified by or approved by the [trial] court or the supervision officer." Both Krieg and the trial court signed the conditions when they were imposed.

In July 2022, Krieg was referred to Psychotherapy Services & Yokefellows (PSY) for a sex-offender evaluation, which included intake questions about his mental health and medical conditions, personality and IQ testing, and the PPG test. From his evaluation, it was determined that Krieg had a "very high risk" of reoffending. The

8

trial court subsequently modified the conditions of Krieg's community supervision to include, "[a]s recommended by the evaluation," sex-offender treatment at PSY and the requirement that he assume responsibility for his offense. The trial court explicitly struck any sex-offender-registration requirements.[6] The modified conditions were imposed on September 29, 2022, and both Krieg and the trial court signed them when they were imposed.

In January 2023, Krieg was arrested following alleged violations of his community supervision. Days later, Krieg filed a "Motion to Release Defendant and Set Reasonable Bail." The trial court modified the conditions of his community supervision to include placement in an Intermediate Sanction Facility (ISF) and successful completion of an ISF aftercare program. A few days later, Krieg filed a motion to set bond and moved for the removal of placement in an ISF program as a condition of his probation. The trial court subsequently modified the conditions of his community supervision to "[r]escind attend and complete ISF and ISF aftercare" and to include sixteen days' confinement in jail.

On June 26, 2023, just over one year after the sex-offender evaluation and treatment conditions were imposed, Krieg filed a "Motion for Reconsideration of

---

[6]On June 13, 2022—three days after the conditions were initially imposed—Krieg filed a motion for new trial asserting that he had been notified that he would be required to register as a sex offender, which had not been contemplated or agreed upon as part of the plea. It is not clear from the record how or from where Krieg received this notice, and the record contains no ruling or order on the motion for new trial.

Terms and Conditions of Probation" complaining of—for the first time—the PPG test. In his motion, he did not raise a due-process complaint but argued that the results were not admissible or credible. However, there is no record that Krieg presented his motion to the trial court or that the trial court ruled on it, and the attorney who filed the motion on Krieg's behalf subsequently withdrew as his counsel for "[i]rreconcilable differences."

On May 29, 2024, almost two years after the sex-offender evaluation and treatment conditions were imposed, Krieg filed a "Motion for Modification of Conditions of Community Supervision." In the motion, he complained about the PPG test's administration and results, asserting—for the first time—that his due-process rights had been violated. He also asserted—for the first time—that he was administered the PPG test "against his will." Krieg claimed that he "would not have accepted the plea deal" had he known that it would "result" in the modified conditions related to sex-offender treatment. However, there is no record that Krieg presented this motion to the trial court or that the trial court ruled on it.

We conclude that Krieg had the opportunity to object to the sex-offender evaluation and treatment conditions at the time they were imposed but chose not to do so. Just days after the conditions were initially imposed, Krieg filed a motion for new trial challenging any sex-offender-registration conditions as part of his community supervision, but he did not challenge the sex-offender evaluation or any contingent sex-offender treatment. Approximately seven months later, Krieg was

10

arrested and the trial court modified his community supervision to include ISF conditions. Days after his arrest, Krieg moved for his release and for bail, and a few days later, he moved to have the ISF conditions removed from his community supervision.

It was not until over a year after both he and the trial court signed the sex-offender evaluation and treatment conditions and almost a year after he participated in the PPG test that Krieg finally objected to those conditions by filing a motion for reconsideration. It was not until almost two years after the conditions were imposed that he raised a due-process complaint or claimed that the PPG test had been administered "against his will." And the record does not show that he ever presented his objections or complaints to the trial court or obtained a ruling on them.

Moreover, Krieg accepted the unobjected-to conditions by participating in a sex-offender evaluation and in sex-offender treatment for approximately two years. *See Harness v. State*, No. 11-14-00301-CR, 2016 WL 4118794, at *3 (Tex. App.—Eastland July 28, 2016, no pet.) (mem. op., not designated for publication) ("Appellant accepted the [condition] by participating in sex[-]offender treatment for almost two years."); *see also Speth*, 6 S.W.3d at 534 ("[C]onditions not objected to are affirmatively accepted as terms of the contract."). Then at the conclusion of the adjudication hearing, Krieg's counsel urged the trial court to maintain him on community supervision "with the same conditions." *See Harness*, 2016 WL 4118794, at *3 (noting that appellant asked for his community supervision to be reinstated but not

11

for sex-offender conditions to be removed or modified and overruling due-process complaint about conditions following conviction for nonsexual offense); *Donovan*, 508 S.W.3d at 356 (similar).

Because the record shows that Krieg did not challenge the sex-offender evaluation and treatment conditions at the time they were imposed—despite being represented by counsel and clearly having the opportunity to do so—we hold that he has forfeited his complaints about the unobjected-to conditions. *See Phi Van Do v. State*, No. 14-18-00600-CR, 2022 WL 17687307, at *1, *2 (Tex. App.—Houston [14th Dist.] Dec. 15, 2022, pet. ref'd) (mem. op., not designated for publication) (concluding error not preserved when appellant signed terms of community supervision and did not complain about conditions imposed); *Harness*, 2016 WL 4118794, at *3 (agreeing with *Donovan*); *Donovan*, 508 S.W.3d at 355–56, 357 (holding that appellant forfeited his due-process complaint about imposition of sex-offender conditions because he did not take steps to object to conditions until almost a year after he signed them, despite opportunities to do so, and record did not show that trial court heard or ruled on his objection before adjudication hearing); *Lopez v. State*, 46 S.W.3d 476, 480 (Tex. App.—Fort Worth 2001, pet. ref'd) ("[W]e are prohibited from hearing on appeal a challenge to the validity of a condition of community supervision unless an objection to that condition was made at the time the condition was imposed, presumably at sentencing . . . ."). We thus overrule his complaints about the conditions of his community supervision.

**B. Evidence Supporting Revocation**

Krieg contends that the evidence was insufficient to support revocation. He argues that the trial court "relied upon inadmissible evidence" to revoke his community supervision—testimony about the PPG test and the results of a polygraph administered during his sex-offender treatment.

Because the State proved by a preponderance of the evidence that Krieg violated the condition of his community supervision requiring him to attend, fully participate in, and successfully complete sex-offender treatment, the trial court's finding of true as to this violation was sufficient to support adjudication.

**1. Revocation Hearing**

At the revocation hearing, Braun testified that the results of Krieg's sex-offender evaluation indicated that he had a "very high risk" of reoffending.[7] Braun explained that from Krieg's results, and after reviewing the facts included in the police report from the offense, PSY developed a sex-offender treatment plan and discussed it with Krieg. He was given a treatment contract, which he signed, that provided the terms and conditions of his treatment plan and what was expected of him during treatment. Braun testified that the goal of treatment was "to have no more victims."

---

[7]Braun described—over Krieg's objection—the purpose of a PPG test and how the results may be used to develop a sex-offender treatment plan to reduce recidivism. He then described—over Krieg's objection—the results of Krieg's PPG test.

Braun described Krieg's participation in sex-offender treatment as "[p]oor," explaining that he "rarely participated." He testified that Krieg had problems complying with the conditions of his treatment "[f]rom the very beginning." For example, he was restricted from being around children without a chaperone, from viewing social media, and from viewing pornography. Just four months into his treatment, it was discovered that Krieg had been unchaperoned around children, that he had been using the internet on unmonitored devices, that he had been watching "Pornhub" approximately twice a week, and that he had been lying about these behaviors "for the last four months."

Krieg also "den[ied] any wrongdoing in his offense" despite the condition of his treatment plan requiring him to take responsibility for his offense. While he admitted to his actions at one point during treatment, he subsequently refused to admit to any wrongdoing. Braun testified that Krieg had become "unsympathetic, very apathetic towards [his victim]," stating that "if he saw her, he would tell her to fuck off."

Additionally, Krieg was prohibited from being verbally or physically aggressive towards staff members, therapists, and other treatment participants at PSY. Braun testified that, in violation of that condition, Krieg was disrespectful, he would ignore the other participants, and he refused to accept any feedback. Braun explained that Krieg's behavior affected PSY's ability to provide treatment to other participants.

14

In January 2023, PSY addressed Krieg's behavior and outlined additional guidelines for him to follow so that he could remain in sex-offender treatment. One guideline required him to submit to a polygraph test. Braun testified—over Krieg's objection—that polygraphs were used in sex-offender treatment as a tool to hold offenders accountable and that the "most basic" polygraph questions were whether the offender had "commit[ted] this offense" or had "d[one] what [he or she] pled guilty to." Braun later testified that Krieg had not passed his polygraph for his offense.[8]

In July 2023, PSY sent a letter to the probation department expressing concerns about Krieg's sex-offender treatment. Braun explained that the letter had informed the probation department that Krieg had not been in compliance with his treatment plan and that he had continued to deny any culpability for his offense. But Krieg remained in treatment; PSY continued to try to work with him to give him an opportunity to complete his treatment plan.

Per his treatment plan, Krieg was required to complete assignments once a month, such as writing out what had happened during his offense. In the two years that he received treatment at PSY, Krieg submitted only four assignments. Braun testified that on multiple occasions, Krieg expressed that he did not need sex-offender treatment. When asked how Krieg's behavior had affected PSY's ability to provide

---

[8]Krieg did not object to this testimony or to any other testimony about his polygraph, specifically.

treatment, Braun testified that "[i]f he[ was] not receptive to any treatment, then he[ was] not going to make any changes and therefore, there[ was] no reason for him to be in the community [at PSY] if he[ was] not going to . . . reduce his risk to reoffend."

Braun then testified about an incident that ultimately led to Krieg's unsuccessful discharge from his sex-offender treatment. In July 2024, during a group session, Krieg told another treatment participant to "fuck off" in response to "feedback on being honest." Braun tried to calm Krieg down but was unable to do so. Because he would not calm down, Krieg was asked to leave the group session. When he left, he slammed the door, causing a clock to fall off the wall, hit another participant, and break on the floor. After this incident, PSY decided to discharge Krieg.

Krieg was unsuccessfully discharged from his sex-offender treatment on July 30, 2024. At the time that Krieg was discharged, PSY had documented the following violations of his treatment contract: (1) his failure to assume responsibility for his offense; (2) his failure to pass a polygraph; (3) his failure to pay $546 in fees; (4) his failure to regularly submit his monthly assignments; and (5) his July 29, 2024 verbal assault of another participant.

Braun testified that Krieg had not made progress to reduce his risk to reoffend sexually and that his behavior during treatment had "significantly increased" his risk to the community. He described Krieg as impulsive and untruthful, and he expressed concern over Krieg's inability to regulate his emotions or to control himself. When

16

asked for his recommendation, Braun testified that Krieg should be sent to prison because it was "the best place for [his] behavior to be managed at th[at] time."

As the judge of the witnesses' credibility, the trial court was entitled to find unconvincing Buker's testimony that Krieg had not violated any conditions of his community supervision, particularly when Buker testified that his son had not done anything wrong and that he should not have been required to comply with any of the conditions of his community supervision. Asserting that he had "an associate's degree in counseling," Buker denied that Krieg needed counseling or had any "sexual deviant issues." He also asserted that Krieg was "a kid who had sex one time." When asked whether, if Krieg were allowed to continue his community supervision, he would help Krieg comply with the community supervision conditions "despite [his] belief that they [were] unfair," Buker testified that he would.

### 2. Sufficient Evidence

The trial court heard testimony that Krieg was unsuccessfully discharged from his sex-offender treatment on July 30, 2024. From the start of his treatment, Krieg refused to follow the plan outlined by PSY in his treatment contract and refused to make the changes necessary to successfully complete treatment. Instead of taking responsibility for his offense, and despite having pled guilty, Krieg denied any wrongdoing and expressed that he did not need sex-offender treatment—a sentiment that was boldly echoed by his father. Krieg's behavior not only affected his own treatment but also affected the treatment of other PSY participants.

17

Braun testified about Krieg's multiple violations of the conditions of his treatment and about his final violation—a verbal assault of another treatment participant—that ultimately led to his unsuccessful discharge. Braun told the trial court that, despite multiple opportunities from PSY and chances to remain in treatment, Krieg had not made progress in his sex-offender treatment and had become an increased risk to the community.

The evidence indicates that Krieg's unsuccessful discharge from his sex-offender treatment was connected to his participation in—and violation of—the conditions outlined by PSY in his treatment plan, the purpose of which was to reduce his risk to reoffend, thereby reducing the risk to the community. Thus, Krieg's unsuccessful discharge from PSY does not offend notions of due process. *See Leonard*, 385 S.W.3d at 577; *Rico v. State*, No. 02-23-00343-CR, 2024 WL 5083187, at *3 (Tex. App.—Fort Worth Dec. 12, 2024, no pet.) (mem. op., not designated for publication).

As for Krieg's evidentiary complaints, we agree with his assertion that polygraph *results* are generally inadmissible. *See Nesbit v. State*, 227 S.W.3d 64, 66 n.4 (Tex. Crim. App. 2007); *Russell v. State*, 798 S.W.2d 632, 635 (Tex. App.—Fort Worth 1990, no pet.). However, Krieg did not object to any questions or answers about the *results* of his polygraph, and he failed to raise any complaints at all about the testimony specifically pertaining to *his* polygraph. *See* Tex. R. App. P. 33.1(a)(1) (providing that, to preserve a complaint for our review, a party must present to the trial court a timely objection); Tex. R. Evid. 103(a)(1) (requiring party to object as soon as basis for the

18

objection becomes apparent). Further, apart from his single objection to the general testimony about the use of polygraphs in sex-offender treatment, he did not object every time polygraph testimony was offered or obtain a running objection to the testimony. *See Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003) (requiring party to object each time the objectionable evidence is offered); *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) (holding a trial court's erroneous admission of evidence will not require reversal when other such evidence was received without objection); *Gardner v. State*, No. 02-09-00360-CR, 2010 WL 4569899, at *4 (Tex. App.—Fort Worth Nov. 4, 2010, no pet.) (mem. op., not designated for publication) (holding appellant forfeited complaint about admission of evidence of polygraph results because he failed to object each time questions about polygraph results were asked or to obtain a running objection to evidence of results). Thus, Krieg has failed to preserve his complaint for our review. *See* Tex. R. App. P. 33.1(a)(1).

Even if Krieg had preserved his complaint about the polygraph testimony, the State explained that it was not offering the testimony to suggest that Krieg's community supervision should be revoked but to explain how polygraphs were used in sex-offender treatment and in Krieg's treatment, specifically. Moreover, the trial court heard testimony that Krieg had violated the conditions of his treatment plan in several other ways that had nothing to do with his polygraph. *See Bussell v. State*, No. 12-16-00117-CR, 2017 WL 2962834, at *3 (Tex. App.—Tyler July 12, 2017, pet. ref'd) (mem. op., not designated for publication) (concluding the record supported an

inference that polygraph results were not the deciding factor in decision to discharge appellant from treatment when appellant violated conditions in other ways).

Regarding his lengthy complaint about the PPG test testimony, we disagree with Krieg's assertion that the trial court relied on this evidence to revoke his community supervision. Nothing in the record indicates that Krieg was discharged from sex-offender treatment because of his PPG test, nor that the State offered the testimony to suggest that the results of Krieg's PPG test had somehow violated either the terms of his sex-offender treatment or the conditions of his community supervision. Rather, the record shows that the PPG test helped PSY develop the treatment plan from which Krieg was ultimately discharged because of his multiple violations—none of which involved the administration or results of his PPG test.

The evidence of Krieg's multiple violations of the terms of his sex-offender treatment plan supports the conclusion that the trial court's revocation of Krieg's community supervision was based, in part, on the determination that he did not successfully complete the PSY program, not on the testimony about his polygraph or PPG test. *See Bussell*, 2017 WL 2962834, at *3; *see also Rico*, 2024 WL 5083187, at *3–4 (concluding testimony showing appellant was unsuccessfully discharged from treatment program for three reasons connected to purpose of appellant's community supervision "d[id] not offend notions of due process" and supported trial court's revocation). Accordingly, we overrule Krieg's evidentiary complaints.

20

Viewing the evidence in the light most favorable to the trial court's ruling, we conclude that the State proved by a preponderance of the evidence that Krieg violated a community supervision condition by failing to attend, fully participate in, and successfully complete sex-offender treatment. Thus, the trial court did not abuse its discretion by revoking Krieg's community supervision and adjudicating him guilty.

## C. Judicial Bias or "Lack of Attention"

Krieg asserts that the trial court violated his due-process rights "by failing to maintain impartiality and attentiveness" and by its "rulings and conduct," including "a potential bias" against him. He claims that the trial court did so in four ways: (1) it erred by overruling Krieg's objections to the admissibility of polygraph and PPG test evidence; (2) it failed to adequately consider Krieg's documented mental health and developmental challenges; (3) it demonstrated bias by allowing Krieg to be treated as a sex offender despite his pleading to a nonsexual offense; and (4) it demonstrated lack of attentiveness and potential bias by denying Krieg's "Motion to Stay and Set Bond." The cumulative effect of these errors, according to Krieg, deprived him of a fair and impartial hearing. He also asserts that the trial court violated his due-process rights by "show[ing] little interest in listening to [his] theories and arguments while paying rapt attention to the State's case, as if [the judge] had made up her mind prior to a word being spoken."

**1. Evidence Rulings**

Krieg attempts to disguise his evidentiary complaints as a due-process violation by arguing that the trial court's bias or "lack of attentiveness" was shown through its overruling of his evidentiary objections. We reject his attempt for two reasons. First, we have already overruled Krieg's evidentiary complaints.

Second, "judicial rulings alone almost never constitute a valid basis for a bias" because "bias or prejudice is something more than an unfavorable ruling and must 'connote a favorable or unfavorable disposition or opinion that is somehow *wrongful or inappropriate.*'" *Casas v. State*, 524 S.W.3d 921, 924 (Tex. App.—Fort Worth 2017, no pet.) (quoting *Liteky v. United States*, 510 U.S. 540, 550, 114 S. Ct. 1147, 1155 (1994)). Nothing in the record suggests that the trial court's evidentiary rulings were somehow wrongful or inappropriate; rather, the record indicates that the rulings were merely "commonplace legal rulings." *See Allison v. State*, No. 05-22-00412-CR, 2023 WL 4229541, at *5 (Tex. App.—Dallas June 28, 2023, pet. ref'd) (mem. op., not designated for publication); *Celis v. State*, 354 S.W.3d 7, 24–25 (Tex. App.—Corpus Christi–Edinburg 2011) (rejecting bias argument based in part on trial court's evidentiary rulings), *aff'd*, 416 S.W.3d 419 (Tex. Crim. App. 2013). Indeed, Krieg has cited no case law for the proposition that a trial court's admission of relevant evidence—he did not object in the trial court based on relevance—is sufficient to show bias. *See Santschi v. State*, No. 14-15-00771-CR, 2017 WL 3090001, at *4 (Tex.

App.—Houston [14th Dist.] July 20, 2017, no pet.) (mem. op., not designated for publication) (reaching similar conclusion).

Accordingly, we overrule Krieg's bias argument as it relates to the trial court's evidentiary rulings.

### 2. Remaining Claims of Bias or "Lack of Attention"

As for Krieg's remaining complaints—his being treated as a sex offender, the trial court's failure to consider his mental health challenges, the denial of his motion to stay punishment, his cumulative-error argument, and the trial judge's "show[ing] little interest" and "ma[king] up her mind" before the hearing—they have been waived by inadequate briefing.

The approximately two to three pages of Krieg's brief addressing these complaints do not contain "appropriate citations to authorities and to the record." *See* Tex. R. App. P. 38.1(i). Aside from a single record citation—testimony in which Braun agreed with Krieg's counsel's assertion that Krieg had "ADHD, anxiety, and depression"—Krieg does not refer us to any pages in the record where the errors allegedly occurred. Further, he wholly fails to provide any legal authority or argument to support his complaints. Accordingly, we overrule Krieg's remaining complaints as inadequately briefed. *See id.*; *Bohannan v. State*, 546 S.W.3d 166, 179–80 (Tex. Crim. App. 2017); *Lucio v. State*, 351 S.W.3d 878, 896 (Tex. Crim. App. 2011).

23

## IV. Conclusion

Having overruled all of Krieg's complaints and having concluded that the trial court did not abuse its discretion by revoking his community supervision and adjudicating him guilty, we affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: November 6, 2025